## CYRUS LEONARD *vs.* RODERICK ALLEN.

In an action for slander, not made in direct terms, but by expressions, gestures, and intonations of voice, it is competent for witnesses who heard the expressions, to state what they understood the defendant to mean by them, and to whom he intended to apply them.

To impeach the plaintiff's character in mitigation of damages in an action of slander, the inquiry should be confined to the plaintiff's general character for integrity and moral worth, or to conduct similar in character to that with which he was charged by the defendant.

A witness in an action of slander, who has stated that the plaintiff's character for moral worth is bad, may be asked, on cross-examination, what immorality is imputed to him.

Leonard v. Allen.

A witness called by the plaintiff in an action of slander, in support of the plaintiff's general character, stated that some spoke very ill and some very well of it. *Held*, that the presiding judge might permit the plaintiff to ask the witness in what particulars some people spoke against him.

A witness called to impeach the plaintiff's character in an action of slander, stated on cross-examination that it was generally reported that the plaintiff had not treated his family well, and had turned his daughters out of doors. *Held*, that the plaintiff could not ask his son, living in his family, whether he ever heard that the plaintiff had so treated his daughters, it being immaterial.

The plaintiff, in an action of slander, cannot show, in order to enhance the damages, that it was currently reported in the neighborhood that the defendant had charged the plaintiff with the crime alleged in the declaration.

SLANDER, for charging the plaintiff with maliciously burning the school-house, in district No. 8, in West Springfield. At the trial, in the court of common pleas, before *Wells*, C. J. the plaintiff did not introduce evidence that the defendant in direct terms charged him with the commission of the offence; but that the defendant had on various occasions made use of certain expressions, gestures, and intonations of voice, which the plaintiff contended were designed and understood to fix the charge upon him. Evidence was introduced of these expressions, gestures, and intonations, and the plaintiff then asked several witnesses what they understood the defendant to mean by using them, both in regard to the charge made, and the person intended. To these inquiries the defendant objected. The presiding judge ruled that it was incumbent on the plaintiff, not only to prove that the defendant intended by these expressions, gestures, and intonations to charge the plaintiff with the offence, but also that he was understood by those who heard or saw him, to make the charge against the defendant, and that the evidence objected to was admissible to prove that the meaning of the defendant was so apprehended, but it should be used for this purpose only. The defendant objected that the evidence could not be introduced for such special purpose only, but the presiding judge overruled the objection, and on this point instructed the jury that to sustain the action, it was incumbent on the plaintiff to prove two things : first, that the defendant designed by the language, gestures, and intonations as proved, to charge the plaintiff with maliciously burning the school-house; and, second, that

Leonard *v.* Allen.

his meaning was apprehended by those who saw and heard the gestures, language, and intonations testified of, and that, if the meaning of the plaintiff was not apprehended, there was no slander for which an action would lie.

In mitigation of damages, the defendant offered evidence to impeach the character of the plaintiff. The presiding judge ruled that the inquiries should relate either to the general character of the plaintiff for integrity and moral worth, or to his reputation in regard to conduct similar in character to the offence with which the defendant had charged him. The defendant excepted to this ruling. And on this point asked a witness, William S. Bailey, "whether the plaintiff's general character in the community where he resides was as good as that of mankind in general." This question was objected to by the plaintiff. The judge ruled that it was too general in its terms, and was inadmissible in that form. The defendant then asked, whether the plaintiff was generally reputed in the community to be a law-abiding man." To this question the plaintiff objected; and the court ruled that it could not be put in that form. Charles Wood, a witness for the defendant, testified that the plaintiff's character in the community for moral worth was not good. On cross-examination the plaintiff asked the witness what immorality was imputed to him. This question was objected to by the defendant; but the answer was admitted. In answer to the plaintiff's cross-examination on this point, the witness stated, "that it was generally reported that the plaintiff had not treated his family well, had refused to live with his wife, and charged her with having tried to poison him, and had turned his two daughters out of doors, and refused to do any thing for their support; also that he was not a strict Sabbath keeper, and that he was too apt to quarrel with his neighbors and children in the lane." In reply to this evidence on the question of character, the plaintiff called George L. Bowe, who testified that the community was about equally divided, some speaking very ill, and some very well of the plaintiff. The plaintiff's counsel then asked, "in what particulars the people spoke against him." This question was objected to by the defendant, but

admitted; and the witness mentioned the same reports as above stated by the defendant's witnesses, and added that nothing else was said against the plaintiff.

The plaintiff also called Cyrus Leonard and Charles Leonard, sons of the plaintiff and living in his family, and asked them whether they had ever heard that their father had turned his daughters out of doors. To this question, the defendant objected, but the court admitted the evidence, as tending to prove that plaintiff had not a general reputation of having turned his daughters out of doors.

Jason Feary, a witness introduced by the plaintiff, was asked by the plaintiff, whether shortly after the fire, it was not currently reported in the neighborhood, that the defendant had charged the plaintiff with burning the school-house. To this question, the defendant objected, but the court ruled that it was admissible, for the purpose of showing that the plaintiff was injured by the circulation of the charge of having committed the offence, but was not evidence to prove that the defendant had made the charge; the witness answered that it was so reported, and that all who spoke of it, spoke of the defendant as having charged the plaintiff with having burned it. This answer was objected to, but admitted with the same limitations. The verdict was for the plaintiff, and to these various rulings, the defendant excepted.

*G. Ashmun & H. Morris,* for the defendant.

*W. G. Bates,* for the plaintiff.

Dewey, J. 1. Considering the nature of the evidence relied upon to prove that the defendant had charged the plaintiff with maliciously burning a school-house, we think it was competent to inquire of the witnesses what they understood the defendant to mean by using " certain expressions, gestures, and intonations," both as to the person intended, and in regard to the charge made against him. This case differs from that of *Snell* v. *Snow,* 13 Met. 278; that being a case of naked conversation, and the whole language capable of being stated fully to the jury, and capable of being fully understood by them. When the charge is made by gestures and signs, and not solely in words, it is the more necessary to allow a departure

from the strict rule that has certainly to some extent prevailed, of refusing to permit a witness to state what meaning he understood the defendant to convey by the words used. Perhaps the cases of *Goodrich* v. *Davis*, 11 Met. 484, and *Miller* v. *Butler*, 6 Cush. 71, may be found to extend somewhat the rule, but however that may be, the court perceive no objection to the ruling on this point.

2. The ruling of the court upon the evidence proposed to be offered to impeach the character of the plaintiff was correct. The case of *Stone* v. *Varney*, 7 Met. 86, went no further than this. There the question allowed to be put was as to the character of the plaintiff " as a man of moral worth."

3. The propriety of allowing the party whose character is impeached by a general statement of his bad reputation for moral worth, to elicit particulars on a cross-examination, seems to follow from the general practice in reference to evidence of bad reputation of a party, more frequently occurring in the case of witnesses, who are impeached. It has been thought useful and favorable to the elucidation of truth in such cases to allow on cross-examination an inquiry as to particulars in the charges, and also in reference to the persons who made them, or gave their opinion as to the character of the individual impeached. We think the ruling was right upon this point.

4. The question arising on the cross-examination of George L. Bowe, is somewhat different, as he was a witness introduced by the plaintiff. Being so, the plaintiff as a general rule, could propose to him only the general question, and this was done in the present case. But the witness having said : " Some spoke very ill of the plaintiff," it was competent for the presiding judge to permit the party who may be supposed to be surprised by the answer, to go further and interrogate the witness, and ask for his explanation of the phrase used by him, and in what respects the community " spoke very ill " of him. Without this power, the witness might, under general words used, convey an erroneous idea, and an effect be given to evidence not warranted by law, and that in a case where the general answer was an entire surprise upon the party call-

21*

ing him, and susceptible of an explanation consistent with maintaining a good reputation as a man of moral worth.

5. As to the evidence of Cyrus Leonard and Charles Leonard, sons of the plaintiff, and called by him in answer to some statements by other witnesses as to reports in the community that the plaintiff had turned his two daughters out of doors, and who were inquired of " whether they had ever heard that their father had turned his daughters out of doors," we are of opinion that this evidence was not strictly competent, and ought not to have been admitted. It is at least immaterial, and for that cause should have been excluded, though, upon the ground of immateriality, its admission might not have required us to set aside this verdict.

6. The testimony of Jason Feary, a witness introduced by the plaintiff, that shortly after the fire, it was currently reported in the neighborhood, that the defendant had charged the plaintiff with burning the school-house, does not seem to us to have been admissible. It was supposed to be so for the purpose of showing that the plaintiff was injured by the charges of the defendant being put into general circulation. But the objection arises from the want of proof that the defendant had circulated those charges, which were abroad generally in the community. The evidence, so far as it went to connect the defendant with them, was mere hearsay. It proved the existence of current reports that the defendant had made such a charge, but it went no further. The admission of this testimony having been seasonably objected to, and it being material upon the question of damages, the verdict must be set aside and a          *New trial granted.*