ROSE G. GARRISON, RESPONDENT, v. NEWARK CALL PRINTING AND PUBLISHING COMPANY, APPELLANT.

Submitted March 23, 1914—Decided December 1, 1914.

1. In an action of libel, evidence otherwise competent and tending to show that by reason of the publication plaintiff became the subject of an unsavory publicity is proper.
2. On this point it was competent to show that plaintiff, claiming to have been libeled as to her matrimonial fidelity, found it necessary to appear oftener with her husband in public than ordinarily would have been required.
3. In case of doubt as to the person intended by the writer of a libel, it is competent to show the understanding of persons to whom it was published, as to the person referred to; the question being not what person the writer in his own mind intended to mention, but what person the readers of the libel were reasonably caused to understand was therein intended.
4. Such understanding may be shown by the testimony of the persons to whom the libel was published. *Quære.* Whether it may be shown by evidence of their declarations.
5. A general objection to evidence is no ground of reversal.
6. On the question of damages for a newspaper libel, it was competent to show that a scandal with which the libel connected plaintiff had been a matter of public notoriety and newspaper comment when it first occurred.

7. Evidence that the plaintiff was rendered "nervous" as a result of a libel, *held* not harmful in view of its being restricted at the trial, and in the instructions to the jury, to mental agitation and disturbance.

On appeal from the Essex Circuit Court.

For the appellant-defendant, *Harry Kalisch*.

For the respondent-plaintiff, *Lambert & Stewart*.

The opinion of the court was delivered by

PARKER, J.   This is a libel suit, in which a judgment for the plaintiff in the Essex Circuit Court is brought before us by an appeal.   We are therefore not concerned with questions of weight of evidence or amount of damages; and inasmuch as there was no motion to nonsuit or to direct a verdict for the defendant, and as the case was submitted to the jury after a careful and comprehensive charge by the trial judge to which there was no exception, and as the court specifically charged all the defendant's requests except the fifth, which was charged with a modification to which exception was taken, but such exception is not now urged, we are not concerned with any rulings at the trial but those on admission and rejection of evidence.

The plaintiff, concededly a respectable married woman, living with her husband, George E. Garrison, claimed to have been libeled by an article in defendant's newspaper of November 22d, 1908, mentioning her as the paramour of one Archer, a former resident of Newark who had absconded some six years before the publication of the article in question, and at the time of its publication had just been arrested in the State of Washington and held for extradition on the application of the New Jersey authorities.   The court admitted in evidence newspaper articles of 1902, published at the time of Archer's departure and which stated that an unnamed woman had run away with him.   The article now in question recalled the departure of Archer, and gave a general

account of the search for him during the six years' interval, under the following headlines:

## "FOR EXTRADITION OF ELLIOT ARCHER

"Absconding Grain Broker Arrested in Seattle May Be Brought to Newark Shortly.

### "A Six Year Search Ended."

and continued in the language complained of as libelous, which is as follows:

"At the time of his arrest Archer is alleged to have been in the company of Mrs. George E. Garrison, formerly of 426 Summer avenue, this city, who, it is said, deserted her husband, a broker, when Archer first disappeared from the city. It is said she has been with him much of the time since. Archer's wife is living in this city, at 124 Lincoln avenue."

It appeared on the trial that the plaintiff had lived for some years and was still living in Summer avenue, not at No. 426 as stated in the article, but at No. 436; and that Archer's female companion was in fact another Mrs. Garrison who had lived at No. 426 Summit avenue, and whose husband's name was not George E. Garrison. The important question of fact at the trial was whether plaintiff was "intended" by the publication. As to this the trial judge instructed the jury, in substance, that they were to ascertain whether the article was meant by its writer to refer to the plaintiff, and if they found that it was so intended, plaintiff was entitled to recover; and further, that defendant was under obligation to make due inquiry, and if through failure to make such inquiry the defendant was carelessly misled, and published a statement so expressed as to be calculated to produce a reasonable general belief that it was spoken of the plaintiff, said plaintiff would be entitled to recover if the statement was defamatory and untrue.

These instructions were at least sufficiently favorable to the defendant. "What meaning the speaker intended to convey is immaterial. * * * He may have meant one thing

and said another  *  *  *  The question therefore is always: How did those to whom the words were originally published understand them?  *  *  *  This is clearly a question for the jury rather than for the judge." *Odg. L. & S.* 109. The question is what the readers or hearers were reasonably caused to understand. *Wigm. Ev.*, § 1971 (*b*). Even if the writer of the news article honestly and without actual malice intended to name the particular Mrs. Garrison that (as testified) did run away with Archer, such intent, not expressed in a method to reach the minds of the public, cannot excuse the defendant. It was competent, therefore, to admit all evidence otherwise legal that was relevant to the proposition that when Mrs. George E. Garrison, wife of a broker and formerly of 426 Summer avenue, was mentioned, the description would reasonably be applied, and in fact was applied, by the public or a portion of it having knowledge of the plaintiff or her husband, to the plaintiff Mrs. George E. Garrison, wife of a former broker, formerly and still living at 436 Summer avenue, only five doors away.

With this somewhat extended preface, we pass to the rulings on evidence that are properly brought before us. They may properly be classified thus:

1. The admission of testimony otherwise competent, tending to show that plaintiff found herself the subject of unsavory publicity.

This was clearly proper in at least two aspects: (*a*) as connected with other evidence tending to show that readers of the article believed it to refer to her; (*b*) as connected with proof of the actual damage. Thus, in *Cook* v. *Ward*, 6 *Bing.* 409, the fact that when plaintiff was at a public meeting some one pointed to him and said "There is Jack Ketch," and a roar of laughter followed, it was held competent as identifying plaintiff as the person believed by the public to be referred to in a newspaper article headed "A Cook mistaken for Jack Ketch," and as a proof of the consequences necessarily resulting from its publication.

2. Admission of evidence tending to show that plaintiff and her husband found it necessary, after the publication

of the article, to appear frequently in public together. This was clearly relevant and competent in connection with the other evidence of unsavory notoriety just mentioned.

3. Admission of testimony of readers of the article, and others participating in discussions about it, as to who in their estimation was meant by "Mrs. George E. Garrison, formerly of 426 Summer avenue."

On the admission of evidence of readers or auditors to show their understanding of the meaning of defamatory words, the authorities are much in conflict, the tendency being to exclude such evidence unless some special ambiguity or obscurity exists. 25 Cyc. 502. Whether the broad language of section 106 of the Practice act of 1903 (Comp. Stat., p. 4085) should lead to greater liberality in this regard, is a question not in this case. With respect to the identity of the person defamed, however, the rule at common law is more liberal, and the weight of authority in this country seems to favor the admission of testimony from readers or auditors that they understood plaintiff to be the person intended. 25 Cyc. 493; Miller v. Butler, 6 Cush. 71. Such appears to be the settled English rule. Odg. L. & S. 129, 567. Indeed, the declarations by readers and auditors of their understanding as to the person intended are held competent. Cook v. Ward, 6 Bing. 412; DuBost v. Beresford, 2 Camp. 511. Plainly, if the question is as Professor Wigmore states it, supra, "what the hearers or readers were reasonably caused to understand," the testimony of those hearers or readers as to what they understood is the very best evidence available on the point. He adds the qualification that "the private understanding of an individual hearer cannot reasonably in theory be offered until it is first shown that some circumstance was known to him which reasonably gave the words a special meaning." This refers more particularly to the meaning of libelous words; but if applicable to questions of identity, the collocation of the name of Garrison with Summer avenue was quite enough to satisfy the qualification.

The case of Harrison v. Globe Newspaper Co., 159 Mass. 263; 34 N. E. Rep. 462, is cited to the contrary. It is suf-

ficient to say that no question of admissibility of evidence was considered in that case, the only question being whether the finding of a trial judge sitting without jury, had any evidence to support it. We may add that the case was decided by a close vote, Mr. Justice Holmes delivering a dissenting opinion and two of the other six justices concurring with him.

4. The doctrine of *Cook* v. *Ward* and *DuBost* v. *Beresford, supra,* leads one step further and affirms the admissibility of .declarations by various members of the public as to their understanding of the person intended. The contrary of this is now argued, and complaint is made of various instances at the trial where the court admitted such testimony, as claimed, erroneously. We are not required to decide the point, because on a careful examination of the brief (there was no oral argument) we fail to find cited a single instance in which this ground of objection, *i. e.*, that it was hearsay evidence, was presented to the court. In several cases it was objected to as repetition; in some as a conclusion, and then the court ruled with the objection; in most, the objection stated no ground whatever. In one or two cases the colloquy discloses that neither court nor counsel treated it as hearsay. Naturally the trial court cannot now be put in error on this ground.

5. Some testimony crept into the case respecting conversations of persons about the plaintiff in connection with other publications than that by the defendant. But wherever this point was made, the testimony was excluded or struck out.

6. The evidence already adverted to, of the publications by the defendant six years before that in question, was proper on the point of damages. The Call was. admittedly a paper of wide circulation, and the plaintiff was entitled to show that the Archer-Garrison episode had been made a matter of notoriety, as bearing on the *quantum* of odium attaching to her because of the libel sued on. This was a question of actual damage, to which the jury were restricted.

7. The testimony of plaintiff that she suffered from mental anguish and "nervousness" as a consequence of the publication, was carefully restricted by the court to disturbance

of mind. Where the mental disturbance ends and the physical disturbance begins is a somewhat delicate question, and the court sensibly avoided it by warning the jury that nervousness "is often more popularly used to characterize the state of mental agitation," and to exclude the idea of physical sickness in connection with it. Among the definitions of the word "nervous" are "easily agitated or annoyed; sensitive; excitable; timid." *Webster's International Dictionary*. In this sense the testimony was not objectionable. The right to recover for mental suffering in defamation cases is well settled. *Knowlden* v. *Guardian, &c., Co.*, 69 *N. J. L.* 670.

8. In line with this is the question whether error was committed in the court's action on the medical expert testimony. The three medical witnesses had great difficulty, to judge from their testimony, in separating the facts connected with mental agitation from those connoting physical disturbance as the result of it. The trial court kept their evidence within bounds as well as it could, and struck much of it out, including the entire testimony of one witness; and to guard against misunderstanding, charged the jury that the plaintiff could not recover "damage for any impairment of bodily or mental health;" and also, as requested, that if the jury found for the plaintiff she was "only entitled to compensation for the actual injury to her reputation and feelings," and that the jury could "not include damages for physical illness or bodily sickness." These admonitions were sufficient to cure any error in the admission of the medical testimony that may have escaped the watchful attention of the court. *Bernardsky* v. *Erie R. R. Co.*, 76 *N. J. L.* 580.

Upon a careful examination of the case we find no injurious error, and the judgment of the Essex Circuit Court will therefore be affirmed.

GARRISON, J. (concurring). I concur in the majority opinion excepting in so far as it deals with the admissibility of the testimony of readers or auditors as to their understanding of the person intended by the libel. Such testimony if competent at all is of practical moment even where the

plaintiff is referred to, by mere innuendo or by veiled allusions or description; the admission of such testimony is therefore negligible in a case like the present when the plaintiff is expressly and correctly named even as to the city and street where she resided. The circumstance that the street number and the business of the plaintiff's husband were incorrectly stated does not justify the substitution of the opinion of witnesses for that of the jury, whose function it was to determine the natural result of the libel as pointing to the person actually named therein. I reach therefore two conclusions—*first,* that the testimony was not competent upon any question the jury had to decide, and *secondly,* that its admission was harmless in view of the fact that the plaintiff was expressly and unequivocally named in the libel.

I am requested by Mr. Justice Trenchard and Judge White to say that they concur in the foregoing view.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ. 12.

*For reversal*—None.