Frederick H. HOPE, Plaintiff-Appellee,

v.

HEARST CONSOLIDATED PUBLICATIONS, INC., The Hearst Corporation and Igor Cassini, Defendants-Appellants.

No. 229, Docket 26639.

United States Court of Appeals Second Circuit.

Argued Jan. 18, 1961.

Decided Sept. 7, 1961.

**682**

Vincent J. Crowe, Siegel & Crowe, New York City (Morris K. Siegel, New York City, on the brief), for plaintiff-appellee.

Charles Henry, New York City (McCauley, Henry & Brennan, New York City, on the brief), for defendants-appellants.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

SMITH, Circuit Judge.

Plaintiff is a young Palm Beach attorney who formerly served as a special agent for the Federal Bureau of Investigation. Defendant Hearst Consolidated Publications, Inc. is the owner and publisher of the New York Journal-American; Cassini is the author of the "Cholly Knickerbocker" column which appears daily in the Journal-American; The Hearst Corporation operates a newspaper service syndicate, King Features Syndicate, which reprints and sells numerous feature columns, including Cholly Knickerbocker, to various newspapers throughout the United States.

The complaint alleged that defendants defamed Hope in a Cholly Knickerbocker column which appeared in the April 21, 1958 Journal-American, the Palm Beach Times of a few days later and numerous other newspapers. The claimed libelous item read as follows:

"Cholly Knickerbocker Says:

Story of Rich Man's Wife Has Palm Beach Gossiping

Palm Beach is buzzing with the story that one of the resort's richest men caught his blonde wife in a compromising spot the other day with a former FBI agent. Cameras, screams of anguish and the whole nawsty bit * * *"

The publication of such a gossip paragraph using no names, known in "the trade" as a "blind item," raised sharply at trial the issue of its applicability to the plaintiff. Hope claimed that he and most others in the community readily recognized the item as referring to himself and to Mrs. Gregg Sherwood Dodge, wife of Horace Dodge—wealthy members of the so-called Palm Beach "International" or "Jet Set." Hope testified that he, as a comparatively new member of the County Solicitor's Office, had received extensive publicity as an ex-F.B.I. agent. His evidence was that he, unlike a number of other former agents in Palm Beach, *was known primarily as an ex-agent;* further, that he was the only one of the former F.B.I. men who traveled in the resort's high society circles.

In addition to his own testimony, plaintiff offered the live testimony of

James J. Lynch, who had called Hope's attention to the column, and the deposition evidence, by written interrogatories, of approximately a dozen other citizens of Palm Beach. After having qualified those witnesses as being residents of the area and acquainted with Hope—and as having read the newspaper item in question—plaintiff's counsel asked them to "state whether at the time you read the article * * * you formed a conclusion as to the name of the former FBI agent referred to in such article." Interrogatory 20 requested the deponent to "state the name of the person you believed to be the former FBI agent referred to in the article * * *" and the next query continued, "state the reason or reasons why you believed such plaintiff to be the former FBI agent referred to in the article * * *" Similar questions were asked concerning the witnesses' recognition of Mrs. Dodge as the lady involved. Plaintiff was allowed, over objection, to read these foregoing questions and the answers of the witnesses to the jury; the correctness of that ruling on admissibility of evidence is the principal issue on this appeal.

Rule 43(a), F.R.Civ.P., 28 U.S.C.A., which governs the admissibility of evidence in Federal civil trials, provides in pertinent part:

> "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs * * *"

No relevant Federal statute has been called to our attention and the New York case law calls for exclusion. Appellee attempts to distinguish the state cases as limited to situations where the witness was simply construing the four corners of the publication in issue rather than applying his own knowledge of outside facts; he argues that where the witness has been properly qualified as to his extrinsic knowledge, his opinion would be admissible. Such reasoning would distinguish two Court of Appeals decisions, Van Vechten v. Hopkins, 1809, 5 Johns. 211, where, indeed, there is language, at page 226, helpful to appellee, and Julian v. American Business Consultants, 1957, 2 N.Y.2d 1, 155 N.Y.S.2d 1, 137 N.E.2d 1. But in Gibson v. Williams, 1828, 4 Wend. 320, the Court, in holding similar evidence to have been properly excluded, placed its ruling on the broad ground that the subject was not one for opinion evidence and that witnesses may simply state the facts, leaving the conclusion for the jury. This was followed and approved in People v. Parr, 1886, 42 Hun 313, where the court added the ground that if the plaintiff could bring in such testimony, the defendant would have to be allowed to counter with evidence that others had not so understood the article—a conclusion that does not necessarily follow but which has been repeated by the New York courts as a basis for the exclusion, Stokes v. Morning Journal Ass'n, 1901, 66 App.Div. 569, 73 N.Y.S. 245; O'Brien v. Bennett, 1902, 72 App.Div. 367, 76 N.Y.S. 498. Although appellee is literally correct in urging that the opinion in Stokes does not indicate whether the witness had been asked to give the background of extrinsic facts supporting his opinion, the circumstances strongly suggest that the opinion testimony must have been founded on such facts rather than on mere interpretation of the publication. Finally, Michaels v. Gannett Co., 1960, 10 A.D.2d 417, 420, 199 N.Y.S. 2d 778, contains a dictum confirming appellant's position; perhaps we would not be bound by this if it stood alone and there were any basis for a contrary view, but there is nothing since 1809 to the contrary and the Van Vechten case is generally cited to support the broad exclusionary rule.

Unless then the opinion evidence was admissible "under the rules of evidence heretofore applied in the courts of the

United States on the hearing of suits in equity," the trial court erred in its ruling. As the scope and thrust of Rule 43 (a) in general and of its "equity clause" in particular have been the source of considerable controversy, it is desirable in interpreting that provision to obtain some further perspective.

Immediately after the promulgation of the Rules, Professor Moore hailed Rules 43 and 44 as making a "frontal attack on the law of evidence * * * (I)t is subdivision (a) of Rule 43 that revolutionizes federal evidence, and in general places admissibility upon the sole basis of relevancy and materiality." 5 Moore's Federal Practice 1313, ¶ 43.02[3]. This sanguine view of the prospective operation of Rule 43(a) was probably based largely on the author's conclusion that equity courts were run much like present day administrative agencies, 5 Moore 1312, and that most proffered evidence, if relevant and material, was freely admitted. 5 Moore 1307, ¶ 43.02[2].[1] Wigmore took a position exactly counter to that of Moore; he deplored what he considered a hodgepodge of Federal evidence rules and felt that Rule 43(a) should have the effect of tying the rules of admissibility and exclusion by and large to the local state practice—except in the unusual case where a Federal statute was pertinent. He relegated the "Federal equity" provision to a virtually inoperative role in affecting admissibility both because the "equity rules" were inapplicable to common law actions and unascertainable due to a general lack of reported opinions; the one thing the courts were *not* to do was to invoke any general "Federal common law of evidence." See 1 Wigmore 201, § 6(c).[2]

At least four Courts of Appeal, the Third, Fifth, Eighth and Ninth circuits, have spoken, implicitly at least, on the question of whether Rule 43(a) authoriz-

1. "It was, then, only with regard to matters of competency of witnesses that the federal equity and admiralty courts were bound to follow the state law of evidence; as to other matters they were free to develop their own evidentiary principles. Because of this freedom not only from state rules, but, generally speaking, from any technical rules of evidence, the equity courts had very little difficulty with questions of admissibility of testimony." 5 Moore 1307.

2. Most commentators adopted a position much more closely akin to that of Professor Moore than of Dean Wigmore. While Moore's hopes for Rule 43(a) have been somewhat sobered by the case law which has built up under the rule, see infra, Barron & Holtzoff, citing liberally from a landmark article by Dean Green, still take the position that a Federal court should apply general concepts of materiality and relevancy whenever there is no clear cut "Federal rule" of exclusion.

"If the state law excludes the evidence, and there is no clear federal rule on the subject the court must decide the question of admissibility on general principles of relevancy, materiality and competency. The purpose of the rule is to make certain the application of a liberal and flexible rule for the admissibility of evidence." 2 Barron & Holtzoff, Federal Practice and Procedure, 675, 676, § 961.

Commenting on the thrust of Dean Wigmore's position, Dean Green stated:

"The primary purpose behind Rule 43 (a) is the removal of uncertainty concerning the source of the federal law of evidence. This purpose has been only partially accomplished. Uncertainty as to the choice of precedents required by the Conformity Act under a unified system of procedure has been replaced by uncertainty as to the choice of precedents required by [this] Rule. A secondary purpose behind the rule is the modernizing and liberalizing of evidence law." Green, The Admissibility of Evidence Under the Federal Rules, 55 Harv.L.Rev. 197, 212 (1941).

Apparently quite willing to live with the "uncertainty" if the goal of liberalization could be obtained, Dean Green urged,

"Rule 43(a) should be interpreted so as to admit in evidence what the district court thinks ought to be admitted when either the United States or the state in which the trial court is sitting has not laid down a controlling rule, and the other excludes the type of evidence in question. It is further submitted that federal decisions in actions at law are precedents for determining the rules of evidence applied in equity." Id. at p. 205.

See also Callahan and Ferguson, Evidence and the New Federal Rules of Civil Procedure, 47 Yale L.J. 194 (1937).

es federal courts to make new rules, based on broad principles of relevancy and materiality, in the law of evidence. Wright v. Wilson, 3 Cir., 1946, 154 F.2d 616, 170 A.L.R. 1237 was a personal injury action wherein the plaintiff was the only surviving eyewitness to the accident. The trial court excluded his proffered testimony on the basis of the "survivor" rule. Judge Goodrich, writing for a unanimous panel, affirmed "without enthusiasm" because the rule was in the "almost unique situation of being condemned by all of the modern writers on the law of evidence." The Court found that the Pennsylvania statute, and its judicial interpretation, unambiguously demanded exclusion and, further, that there had never been a Federal rule in law or equity which called for a different result. Implicit in the Court's holding was a rejection of the Moore-Green-Barron & Holtzoff view that Rule 43(a) freed federal courts from all restrictions on admissibility save relevancy and materiality; the Court stated, "we believe this to be a case where a rule so thoroughly established through many generations of judicial history should be removed by legislative action or court rule which applies generally and not by judicial legislation against a party in a particular case." 154 F.2d at page 620.[3]

The Fifth Circuit recently, in a considered dictum, came to the opposite conclusion. Monarch Ins. Co. of Ohio v. Spach, 5 Cir., 1960, 281 F.2d 401. There the court held that a Florida statute which would bar the use at trial of a prior statement by the corporate plaintiff's president because he had not been furnished a copy did not serve to exclude it in the federal court. The court reasoned that no equity case law was necessary to es-

tablish the presence of a rule favoring admissibility because the use of such a prior inconsistent statement was clearly "one of the most ancient of the forensic weapons." [281 F.2d 411.] Although that holding disposed of the case, the Court, having exhaustively discussed the scope and policy of Rule 43(a)—and the problems posed by Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188—went on to add,

> "* * * since federal equity courts in determining admissibility 'heretofore' had been required to undergo the judicial travail of searching from many respectable sources— common law, state and federal, etc. —there was no purpose in a rule promulgated for the future. either to prohibit or make unessential like efforts as new occasions required.

> *  *  *  *  *  *

> "While we thus have no doubt that this evidence was admissible under [equity rules] we think another factor is pertinent to Rule 43 (a). It does speak in affirmative terms of admissibility, not exclusion. It defines the three standards for admissibility. But it does not purport to prohibit the admission of other relevant material probative evidence which, in the considered exercise of judicial wisdom, is trustworthy. There are probably few instances in which evidence proffered will not come within the three categories or, on the other hand, be expressly excluded. But in today's litigation with its endless complexities many of which are an outgrowth of our scientific age we would hardly think that a court constituted with all of the power the organic constitution

---

3. The Third Circuit probably further reinforced the Wilson case in Gordon v. Robinson, 3 Cir., 1954, 210 F.2d 192, 194. The court found that "nothing in the old equity rules sheds any light on the problem" and held that certain evidence should not have been admitted; the grounds for exclusion are perhaps somewhat clouded, however, by the fact that the court apparently felt, *on the basis of its own criteria*, that the questioned evidence was highly prejudicial and "grossly improper."

The Eighth Circuit has lined up with Wright v. Wilson in Schillie v. Atchison, Topeka & Santa Fe Ry. Co., 8 Cir., 1955, 222 F.2d 810. See also Potlatch Oil & Refining Co. v. Ohio Oil Co., 9 Cir., 1952, 199 F.2d 766.

could invest in it would have to stand helpless in the face of a new situation. Since it has vast duties and powers respecting both men's liberty and property, surely such court has the capacity to deal judicially with the manner of ascertaining the truth in a novel situation. At least federal district courts are no less potent than they were in pre-1938." 281 F.2d at page 411.

As the foregoing cases illustrate, neither side thus far can claim total victory in the Moore-Wigmore controversy over the import of Rule 43(a). Barron & Holtzoff urge that the Spach case "deserves to be followed." 2B Barron & Holtzoff, § 962, p. 218. As Judge Brown pointed out in Spach, however, "There are probably few instances in which evidence proffered will not come within the three categories or * * * be expressly excluded." 281 F.2d at page 411. Since we here hold that the challenged evidence in the instant case was properly admissible under equity rules *heretofore* applied in federal courts, we need not decide at this time whether the federal courts can and should feel free to develop new rules of evidence as novel situations may demand.

Appellant argues that the "reform" movement for uniform rules of evidence in Federal courts indicates, in and of itself, the extent to which the courts have felt themselves bound by state exclusionary rules. It is true that some of those pressing for uniform rules have indicated their dissatisfaction with Rule 43(a) as a vehicle for allowing the courts any real freedom from outmoded and restric-

tive rules governing admissibility of evidence.[4] The Advisory Committee on the Federal Rules however, in 1946, while shelving at that time any immediate action on a uniform code of evidence for the Federal courts, noted that the "rule is working better than [the] commentators had expected." Moore, while confessing he had been overly optimistic in predicting a complete modernization and liberalization of federal evidentiary rules —and while still pressing for the promulgation of a uniform code—commented that the Rule "has worked tolerably well." [5] 5 Moore 1313.

■ We think that the case law in this circuit and, generally, elsewhere supports a broad and liberal application of Rule 43(a)'s "federal equity" clause in order fully to implement the rule as one of "admissibility [and] not [of] exclusion." Wright v. Wilson, supra, 154 F.2d at page 617; Hertz v. Graham, D.C.S.D.N.Y.1958, 23 F.R.D. 17, 24. In a case decided shortly after the promulgation of the Federal Rules of Civil Procedure, this court stated, " * * * we are directed by Federal Rule 43(a) * * * to follow *that holding on evidence*, whether state or federal, which most favors admissibility." Boerner v. United States, 2 Cir., 1941, 117 F.2d 387, 391 (emphasis added). In Travelers Insurance Company v. Childs, 2 Cir., 1959, 272 F.2d 855, the court held properly admissible the opinion of a physician, not a psychiatrist, on an issue of mental capacity; it cited two Supreme Court cases and one decision by the Court of Appeals for the District of Columbia although appellants apparently argued, on the basis of New York law,

4. See Hon. Joe E. Estes, The Need for Uniform Rules of Evidence in the Federal Courts, 1960, 24 F.R.D. 331; Degnan, The Feasibility of Rules of Evidence in Federal Courts, 1960, 24 F.R.D. 341; Joiner, Uniform Rules of Evidence for the Federal Courts, 1957, 20 F.R.D. 429.

5. Professor Moore, in another place in his text, expressed a much less cheerful view of the operation of Rule 43(a):
   "While the rule is cast in favor of admissibility and competency, in general its

net effect has been to refer the question to state law for solution, including decisional law. In other words, where there is no federal statute or equity rule in favor of admissibility, *as so often is the case*, the matter is governed by state law * * * " 5 Moore 1314, ¶43.02 [4]. (Emphasis added.)
   Analysis of the cases, *infra*, indicates to us that he underestimated the ingenuity of the courts in finding relevant "equity rules" which allow admission of relevant testimony into evidence.

that such an opinion was inadmissible. In neither of the foregoing cases did the court reason out the ultimate step, in conformance with the strict wording of the rule, of "carrying over" the so-called "Federal rule" to equity. In this court's last term, that step was taken. In Carlson v. Chisholm-Moore Hoist Corp., 2 Cir., 1960, 281 F.2d 766, the court held that it would not require proof of application in equity where the rule was of a general nature and had been applied in admiralty and at law, since *aequitas sequitur legem.*

No cases in this circuit clearly call for a restrictive interpretation of Rule 43 (a). The court in Mosson v. Liberty Fast Freight Co., 2 Cir., 1942, 124 F.2d 448, held that certain impeaching testimony should have been excluded because it was admissible neither under New York law nor under Rule 43(b) which specifically defines the scope of examination and cross-examination, holding it incompetent in any aspect. The statement in Conn v. Young, 2 Cir., 1959, 267 F.2d 725, 728 that "rulings on the admissibility of evidence are governed by the law of the forum" is not directed to the problem here. That was a diversity case involving a New Hampshire accident tried in the Vermont Federal District Court; the court apparently was stating only that while the substantive law of the situs of the accident governed, the pertinent evidentiary law was that of Vermont. The court did not say *to what extent* the law of the forum governed—and since the law of Vermont favored admission, the problem of the effect of "Federal law," if any, never arose.

Other circuits have, by and large, demonstrated equal liberality in the admission of relevant testimony under the "Federal equity" clause of Rule 43(a). In New York Life Insurance Co. v. Schlatter, 5 Cir., 1953, 203 F.2d 184, the court held that certain evidence, excludable under Mississippi law, was admissible under the "Federal *res gestae* rule," citing two opinions from actions at law. The Sixth Circuit in Peoples Gas Co. of Kentucky v. Fitzgerald, 6 Cir., 1951, 188 F.2d 198 held that an expert witness could testify as to matters not common knowledge even though part of the "ultimate fact"; although Kentucky law perhaps called for exclusion, admission was upheld on the basis of a "general rule." Without even alluding to Rule 43(a), the Tenth Circuit reached a similar result in a case concerned with the scope of allowable expert testimony, Miller's National Insurance Co., Chicago, Ill. v. Wichita Flour Mills Co., 10 Cir., 1958, 257 F.2d 93, 76 A.L.R.2d 385. The Spach case, holding that no case support need be found to justify admissibility in a situation where evidence surely must have been admissible in equity, has already been mentioned; the Fifth Circuit has since reinforced further their Spach opinion in two very recent cases, Dallas County v. Commercial Union Assurance Co., 5 Cir., 1961, 286 F.2d 388 and Hambrice v. F. W. Woolworth Co., 5 Cir., 1961, 290 F.2d 557. In two cases, federal courts have upheld the admissibility of evidence on the basis of a general federal or circuit "rule" established *after* the operative date of the Rules of Civil Procedure.[6] United States v. Brunner, 6 Cir., 1952, 200 F.2d 276; Lawrence v. Nutter, 4 Cir., 1953, 203 F.2d 540. Finally, two district courts have shown a disposition to approach this problem in the broad flexible manner called for by the Fifth Circuit in the Spach case. Hertz v. Graham, D.C.S.D.N.Y.1958, 23 F.R.D. 17; Een v. Consolidated Freightways, D.C.D.N.D.1954, 120 F.Supp. 289.

We do not believe that in Wright v. Wilson and Gordon v. Robinson, supra, our brothers on the Third Circuit look

6. In neither of these cases was jurisdiction based on diversity of citizenship. Since we do not feel that any constitutional overtones of the Erie doctrine—or any other interpretation of that decision— prevent application of Federal rules of evidence in diversity cases, that fact is immaterial. A full discussion of the Erie problem in this particular can be found in Monarch Ins. Co. of Ohio v. Spach, supra.

the other way. As noted before, the court in the Robinson case appears to have felt that admission of the contested evidence was "grossly improper" under any standard. In Wright v. Wilson, Judge Goodrich noted that "whatever door one tries it is firmly locked against the admissibility of the proffered testimony * * *" 154 F.2d at page 619; the federal rule had always been either to exclude survivor testimony or to refer the question to state law—and "the survivor rule principle applied in equity suits as well as actions at common law." [7] 154 F.2d at page 619. That the Third Circuit rather would espouse liberal use of "Federal rules" of evidence supporting admissibility is a view strengthened by Franzen v. E. I. DuPont de Nemours & Co., 3 Cir., 1944, 146 F.2d 837, a case, neither overruled nor disapproved by the subsequent Wilson and Robinson decisions, in which the court held the deposition of a man dead at time of trial "clearly admissible" under a general federal rule; the court cited as authority a prior case "at law."

It is true that the Eighth Circuit, in Schillie v. Atchison, Topeka & Santa Fe Ry. Co., 8 Cir., 1955, 222 F.2d 810, appears to have taken a rather strict view of Rule 43(a). The court there carefully looked *behind* a number of Federal court cases cited to him in favor of admissibility and concluded that there was no "Federal rule"; the opinion implies, however, that decisions at law are sufficiently indicative of federal equity practice to satisfy the Rule 43 requirement—thus making the federal courts unanimous, so far as we have been able to ascertain, in adopting Dean Green's suggestion that "federal decisions in actions at law are precedents for determining the rules of evidence applied in equity." See footnote 2, supra.

Having concluded that a broad application of the equity provision is warranted, it remains to determine whether there is sufficient indication, in prior precedent, to allow the court fairly to conclude that a federal equity court would have admitted the evidence in question. We think there is. In Enquirer Co. v. Johnston, 7 Cir., 1896, 72 F. 443, the court held that the trial judge properly admitted, in a libel case, testimony similar to that challenged here. The court based its holding on general legal and evidentiary principles—and not on the strength of any purportedly governing state law. Although that case appears to be the only Federal precedent squarely on point, a dictum in Service Parking Corp. v. Washington Times Co., 1937, 67 App.D.C. 351, 92 F.2d 502, points in the same direction.

We might be hesitant to construct an edifice of a general "Federal rule of evidence" if these two cited cases were the only bricks at hand. In determining its rules of admissibility, however, a Federal equity court would undoubtedly look beyond the rather meager Federal precedent to "undergo the judicial travail of searching from many respectable sources." Monarch Ins. Co. of Ohio v. Spach, supra, 281 F.2d at page 411. In this regard, it appears that the New York exclusionary rule represents a distinct, if not a lone, minority voice. The vast majority of reported cases, from both American state and British courts, espouse the admission of such evidence;[8] the text-

7. This explanation of Wright v. Wilson is equally applicable to the decision of the Ninth Circuit in Potlatch Oil & Refining Co. v. Ohio Oil Co., 9 Cir., 1952, 199 F. 2d 766.

8. Russell v. Kelly, 1872, 44 Cal. 641; Hawks v. Patton, 1855, 18 Ga. 52; Smawley v. Stark, 1857, 9 Ind. 386; De Armond v. Armstrong, 1871, 37 Ind. 35; Winans v. Chapman, 1919, 104 Kan. 664, 180 P. 266; Goldsborough v. Orem & Johnson, 1906, 103 Md. 671, 64 A. 36;

Miller v. Butler, 1850, 6 Cush. 71, 60 Mass. 71; Leonard v. Allen, 1853, 11 Cush. 241, 65 Mass. 241; Commonwealth v. Enwright, 1927, 259 Mass. 152, 156 N. E. 65; Farrand v. Aldrich, 1891, 85 Mich. 593, 48 N.W. 628; Hoeffner v. Western Leather Clothing Co., Mo.App.1942, 161 S.W.2d 722; Smart v. Blanchard, 1860, 42 N.H. 137; Garrison v. Newark Call Printing & Pub. Co., 1914, 87 N.J.L. 217, 92 A. 590; Colbert v. Journal Pub. Co., 1914, 19 N.M. 156, 142 P. 146; Briggs v. Byrd, 1850, 33 N.C. 353; McLaughlin

writers similarly advocate its admissibility.[9] In view of the strength and general persuasiveness [10] of these authorities we are confident that, had the question arisen, a Federal court hearing a

suit in equity would have admitted the identifying evidence here put forth.

An alternative objection may be raised —that this rule being one pertinent only to defamation actions could not possibly

---

v. Russell, 1848, 17 Ohio 475; State v. Mason, 1894, 26 Or. 273, 38 P. 130, 26 L.R.A. 779; Chapa v. Abernethy, Tex.Civ. App.1915, 175 S.W. 166; People v. Ritchie, 1895, 12 Utah 180, 42 P. 209; Knapp v. Fuller, 1881, 55 Vt. 311. Cf. Dewing v. Blodgett, 1932, 124 Cal.App. 100, 11 P.2d 1105; Julian v. Kansas City Star Co., 1908, 209 Mo. 35, 77–80, 107 S.W. 496; Morgan v. Livingston, 1846, 2 Rich.,S.C., 573; Jenkins v. Southern Ry. Co., 1924, 130 S.C. 180, 125 S.E. 912.

Bourke v. Warren, 2 Car. & P. 307 (1826); cf. Broome v. Gosden, 1 C.B. 728 (1845). See also United States v. Ocampo, 18 Phil. 1, 45 (1910); Worcestor v. Ocampo, 22 Phil. 42, 86 (1912).

9. 7 Wigmore on Evidence 112, § 1971; 2 Greenleaf on Evidence (Lewis Ed. 1897) 489, § 417; Odgers on Libel and Slander (6th Ed. 1929) 559. See also 53 C.J.S. Libel and Slander § 209; 33 Am.Jur., Libel and Slander, § 243; American Law Institute, Restatement of the Law of Torts, § 564.

10. As has been noted previously, Rule 43 (a) reads in terms of admissibility—directing Federal Courts *to admit* evidence properly received under any of the three stated alternatives. While the clear wording of the rule would seem flatly to preclude a court from excluding proffered evidence admissible under either state or federal evidentiary practice, Dean Green has strongly urged the avoidance of a literal and mechanical application of the rule.

"Rule 43(a) is founded on the assumption that when a choice may be made between two rules, the one which will admit the evidence should always be chosen. Taken as a general principle this assumption is sound, but like many another broad principle it is not universally correct. Sometimes the law excluding the evidence should be chosen." 55 Harv.L.Rev. 197, 222.

Dean Green would presumably always place the *desirability* of admission or exclusion in issue regardless of the existence of a state or federal rule favoring admissibility. Although we might hesitate to adopt such a position in the face of Rule 43(a)'s apparent mandate, in cases where one rule clearly favored admissibility, surely considerations of desirability are germane in a situation such as the one

at bar—where we are attempting to make an "educated guess" as to the reaction of a Federal equity court presented with a similar problem.

In this regard also we feel the evidence was properly admitted. If the key question be considered one concerning non-expert opinion evidence, the modern view is to allow such testimony to be presented to the jury with proper cautionary instructions. This can be seen most clearly in cases involving an issue of mental capacity; once the witness has testified as to his personal knowledge of and his opportunities to observe the subject, he may then give an opinion as to competency. Connecticut Mut. Life Insurance Co. v. Lathrop, 1884, 111 U.S. 612, 4 S.Ct. 533, 28 L.Ed. 536; Turner v. American Security & Trust Co., 1909, 213 U.S. 257, 29 S.Ct. 420, 53 L.Ed. 788.

Virtually all present day critics favor some simplification and liberalization of our evidentiary rules along broad lines of materiality and relevancy—with discretion to be vested in the court to administer the trial in a flexible manner keeping in mind considerations of trial expedition, probative value and likelihood of undue prejudice in the minds of the jurors. See, e. g., McCormick, Handbook of the Law of Evidence (1954), xi, xii; American Law Institute, Model Code of Evidence; 5 Moore 1313; Moscowitz, Trends in Federal Law and Procedure, 1946, 5 F.R.D. 361, 367. In the instant case the most important single issue on the question of liability was the applicability, to plaintiff, of the "blind item." The testimony of the dozen or so residents who had read the item and who knew Hope was thus highly relevant and material; the "standpoint of the [Palm Beach] community" was all important. Of course, the inferences drawn by single members of the community are of limited probative value as bearing on what the community as a whole could reasonably infer. This weakness, however, was exploited fully by defense counsel in his cross-interrogatories and in his summation to the jury. The court's cautionary charge concerning the questioned testimony was quite clear. We think that such a procedure better serves the truth finding process than does absolute exclusion.

have arisen or been applied in equity. While this contention has plausibility, we think it is based on too narrow a conception of the pertinent "rule of evidence" and of the jurisdiction of federal equity courts.

As noted before in the discussion of Rule 43(a), the reference to rules of evidence applied in equity courts would be virtually meaningless were the courts to insist upon actual "equity precedent"—there is little or none. The courts instead have employed the equity rules clause to implement admissibility either by merely citing a general Federal rule of evidence or by noting the rule, at law, and reasoning from there that equity too would have applied it on the basis of the maxim *aequitas sequitur legem*. It is that reasoning process which causes difficulty in a case in which, as here, it is claimed the specific question could not have arisen in equity.

Assuming, *arguendo*, the *precise* question of admissibility here posed was never passed upon in equity, that fact is not dispositive of the issue. The rules of evidence are more than fragmentary bits of specialized ground rules; rather, they represent, in the main, the attempted application of broad rules of admissibility and exclusion, supposedly best designed to promote and protect the truth finding process, in an unlimited number of unique courtroom situations. Thus, what is here characterized as a rule peculiar to defamation actions has been analogized to (and justified by citation of) the rule admitting lay opinion on the issue of insanity, a problem which is not a stranger to equity courts. Knapp v. Fuller, 1881, 55 Vt. 311. Other courts have similarly treated the question as one closely allied to the overall problem of opinion evidence. Service Parking

Corp. v. Washington Times Co., supra, 92 F.2d at page 504; Julian v. Kansas City Star Co., 1908, 209 Mo. 35, 77–80, 107 S.W. 496. Wigmore states that these libel cases have "nothing to do with the opinion rule," 7 Wigmore 113, § 1971, fn. 5; but indicates rather that the problem is broadly one of relevance to the ultimate notion of whether a particular person was defamed by certain words. This "requires us to take the standpoint of the community, or of the particular hearers or readers." 7 Wigmore 112. Upon this formulation of the admissibility problem, the argument for exclusion would appear to be that such testimony allows the witness to "encroach on the jury's function" by giving direct conclusions on one of the "ultimate facts" [11]— in this case identification or applicability to the plaintiff of the alleged defamatory publication.

However the rule be explained, whether in terms of the opinion rule or otherwise, it would appear closely related to many specific evidentiary questions which must have come before equity courts.[12] Probably basic to our approach here is our belief that just as the equity clause of Rule 43(a) does not restrict the courts to actual reported equity precedent, it likewise is not limited to so-called traditional "equity causes." The equity rules undoubtedly were invoked primarily because equity courts were relatively free from the Conformity Act, 17 Stat. 197, and not bound by state judicial precedents on evidence, 1 Wigmore 171; to use this invocation in 43(a), a Rule of "admissibility and not of exclusion," as an instrument to withhold the benefits of broader admissibility in causes arising "at law" would be unduly to restrict the operation of the Rule.

11. That was the very argument advanced in favor of exclusion in the Carlson case, supra, where this court held that the evidence was nonetheless admissible on the strength of a general Federal rule applied at law and in admiralty.

12. There is some support for this approach in the Spach case, supra, where

the court adopted the broad common denominator of "prior inconsistent statements" rather than narrowing the specific problem before the tribunal so as to distinguish it from principles governing the use of "one of the most ancient of the forensic weapons."

Finally, even if we are wrong in the foregoing analysis, there is sufficient precedent in Federal equity cases to support the inference that the evidentiary problem here presented might well have been before the equity courts. The traditional rule, of course, is that Federal equity courts have no jurisdiction to enjoin defamation. Kidd v. Horry, C.C.E. D.Pa.1886, 28 F. 773; see generally Pound & Chafee, Cases on Equitable Relief Against Defamation and Injuries to Personality (2d ed. 1930). There is, however, a line of cases enjoining false and libelous publications where plaintiff's property rights were thereby being injured and where the libel had overtones of coercion and restraint of trade. Emack v. Kane, C.C.N.D.Ill.1888, 34 F. 46; Adriance, Platt & Co. v. National Harrow Co., 2 Cir., 1903, 121 F. 827; A. B. Farquhar Co. v. National Harrow Co., 3 Cir., 1900, 102 F. 714, 49 L.R.A. 755; Sun-Maid Raisin Growers of California v. Avis, D.C.N.D.Ill.1928, 25 F.2d 303. Although intimidation and restraint of trade may be the principal keys to the equity court in these cases, Willis v. O'Connell, D.C.S.D.Ala.1916, 231 F. 1004, the main elements of a defamation action are nonetheless present. The plaintiff, as a necessary element in obtaining relief, would have to prove that the coercive lies were understood, by customers, to be aimed in his direction. In a case where the plaintiff was not specifically named, the exact issue now before us would be presented. Resort to the rules of evidence employed in Federal equity courts is thus not barred by inapplicability.

Two further arguments made by appellants warrant little discussion. Although the verdict of $58,500 [13] is quite high, we do not think the trial judge abused his broad discretion in this area by refusing to set it aside. The award was not "monstrous." Dagnello v. Long Island Rail Road Co., 2 Cir., 1961, 289 F. 2d 797.

Defendants further contend that it was erroneous to admit evidence that Hope lost an election for State Senator after the publication of the libel. The question is an interesting one. In Southwestern Publishing Co. v. Horsey, 9 Cir., 1956, 230 F.2d 319 the court excluded such evidence as overly speculative; the New York courts allow it however, Cortright v. Anderson, 1924, 208 App.Div. 1, 202 N.Y.S. 729, as an item of special damage. Here plaintiff neither pleaded not attempted to prove any pecuniary damage and the jury was not charged as to any alleged loss of income. Plaintiff justifies proof of loss of the election on the basis of his pleading that the libel "caused the readers thereof to believe * * * plaintiff * * * morally and temperamentally unqualified to hold any public office or other position of trust and confidence" as an element of general damage. Since the New York courts consider the election returns sufficiently probative to submit to a jury, reception of the evidence was proper. As the question of pecuniary loss was not injected into the case at any point, we cannot see how defendants were prejudiced by the failure to plead special damages.

The judgment is affirmed.

LEONARD P. MOORE, Circuit Judge (dissenting).

Were this merely another case in which the damages awarded were "excessive" but not "grossly excessive" [1] or high but "not monstrous," [2] a dissent in this case would add nothing to the literature already available on the subject or to the analyses found in the various opinions in Southern Pacific Co. v. Guthrie, 9 Cir., 1951, 186 F.2d 926 or the suggestion of power to review damages found in a recent opinion in this circuit

13. $22,500 in compensatory damages spread evenly among the three defendants. In addition, the jury assessed $12,000 punitive damages against each defendant.

1. Southern Pacific Co. v. Guthrie, 9 Cir., 1951, 186 F.2d 926.

2. Affolder v. New York, Chicago and St. Louis R. R. Co., 1950, 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683.

(Dagnello v. Long Island R. R. Co., 2 Cir., 1961, 289 F.2d 797. Actually, such adjectives as monstrous, inordinate, outrageous and excessive are meaningless as legal standards for decision or review. Possibly some day the courts will allow the shuttlecock of responsibility for damage control now being batted back and forth between trial and appellate courts to come to rest on one side or the other of the procedural court, thus giving the spectator litigants an opportunity to know where it is.

The importance of this case lies in the fact that, in my judgment, it overrides the principles and the spirit of the Supreme Court's Erie R. Co. v. Tompkins[3] and Guaranty Trust Co. of New York v. York[4] decisions. If that Court's statement that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court" (326 U.S. 99, 109, 65 S.Ct. 1464, 1470), is to be taken at all seriously, we have a situation in which a mass of evidence of vital importance in a jury case was admitted in a Federal court which even the majority concedes would be inadmissible in the same case in the State court located across the street. And all this because of the fortuitous circumstance of diversity.

There can be no doubt that testimony (by written interrogatories) of several witnesses that they had in their own minds formed the conclusion that the news article referred to plaintiff and to a Mrs. Gregg Dodge must be considered as highly material. But this, of course, was the very conclusion which was for jury determination upon the facts. That a jury would not have been strongly influenced by such speculative conclusions is scarcely open to doubt.

The problem posed is whether Rule 43 (a)[5] supersedes the Erie-Tompkins, Guaranty Trust-York rule. Rule 43(a)

is clear enough. It permits the admission of all evidence (1) admissible under the statutes of the United States (inapplicable here) ; (2) admissible in United States courts "on the hearing of suits in equity" (inapplicable here because this is a common law jury case) ; and (3) admissible "under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held" (this third category alone applies). The Rule continues that "the statute or rule which favors the reception of the evidence governs." This provision is likewise inapplicable because no statute is involved and no New York rule favors admission. To the contrary as the majority concede, "the New York case law calls for exclusion."

Fundamental in any consideration of the problem here is the fact that this is a common law jury case. Throughout the ages, evidentiary rules have been built up by the courts and legislators whose practical experience has indicated that the goal of an accurate determination of the truth is best served by the observance of somewhat different rules in jury cases than in non-jury equity cases. The reason for this difference is that a judge trained in the law is better able to weigh the law and the facts. Hearsay evidence is excluded because it is apt to lack reliability. Opinion evidence is confined to experts in the particular subject under consideration.

Of course, all rules of evidence are not within the purview of the Erie doctrine. If a rule of evidence is directed not toward reaching a particular result but toward promoting an efficient and fair trial, and is not directly related to primary rights and duties, it might well be "procedural" for Erie purposes. For example, rules governing the admission of impeachment evidence and the scope of cross examination would clearly fall within this category. See Note, 66 Harv.

---

3. 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188.

4. 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079.

5. Federal Rules of Civil Procedure.

L.Rev. 1516 (1953). On the other hand, some State rules of "evidence" are so intertwined with primary rights and duties and are so obviously directed toward reaching a particular result that they are clearly "substantive" in the Erie sense, and should apply irrespective of what a federal equity court might have done. Such would be a State parol evidence rule. As this court said in Zell v. American Seating Co., 2 Cir., 1943, 138 F.2d 641, 643, reversed on other grounds, 1944, 322 U.S. 709, 64 S.Ct. 1053, 88 L.Ed. 1552: "Were the parol evidence rule a rule of evidence, we could decide this question without reference to state court decisions. But the federal courts have held, in line with what has become the customary doctrine in most states, that it is a rule of substantive law, i. e., the extrinsic proof is excluded because no claim or defense can be founded upon it." Accord, Long v. Morris, 3 Cir., 1942, 128 F.2d 653, 141 A.L.R. 1041.

The fallacy in the majority opinion, in my opinion, is that it proceeds to determine what a hypothetical federal equity court would have done before making an initial classification of the State exclusionary rule. Thus, I presume, the majority, if it could find a federal equity exception to the parol evidence rule, would apply this exception notwithstanding a contrary State rule, thereby, in effect, changing the State substantive law as to rights and duties flowing from certain contracts.

The State exclusionary rule in defamation cases is not as obviously "substantive" as the parol evidence rule. In some respects, it is merely one aspect of the general rule excluding lay opinion evidence. Nonetheless, it clearly has certain "substantive" overtones. There can be no dispute that the evidence sought to be excluded is of such a prejudicial nature that it could easily have affected the outcome of the law suit. And it seems equally clear that it is a rule of special pertinence to defamation actions and is rigidly enforced in New York (see Julian v. American Business Consultants, 1956, 2 N.Y.2d 1, 155 N.Y.S.2d 1, 137 N.E.2d

1), despite the more flexible treatment in New York of opinion evidence in other fields. See, e. g., Greenfield v. People of State of New York, 1881, 85 N.Y. 75; Matter of Herrmann, 1912, 75 Misc. 599, 136 N.Y.S. 944. Just as in a contract action, certain oral statements cannot create rights and duties, so too in a libel action in New York a defamatory statement which does not directly refer to the plaintiff cannot be made the basis of a recovery merely because certain individuals are willing to state that they believed the statement to refer to the plaintiff. This rule is, in some respects, part and parcel of the substantive defamation law of New York, evincing a strong State policy which federal courts in diversity actions should respect regardless of what a federal equity court might have done.

Since all the doors of Rule 43(a) are closed to the reception of the evidence in question, what door does the majority pry open to gain admission? Surprisingly enough, the "equity" door in a concededly common law case. To "conclude that a federal equity court would have admitted the evidence in question" is to assume a non-existent situation. This jury case could not possibly have been brought in equity. Therefore, an equity court could never have been faced with the problem of admission or exclusion. Of what pertinence can it be, as a foundation for decision, to say that "had the question arisen, a Federal court hearing a suit in equity would have admitted the identifying evidence here put forth"?

I agree completely with the majority that "The rules of evidence are more than fragmentary bits of specialized ground rules"; and that they are "supposedly best designed to promote and protect the truth finding process." New York State in its court decisions has decided that "truth finding" is best achieved by exclusion; other States have held the contrary. In final analysis, therefore, in my opinion, the majority are, in effect, holding that in a Federal court whether the action be common law or equity, the judge can receive any evidence he may choose to accept under broad principles

of federal law (whatever they may be) because some court somewhere might in an equitable action admit the evidence. This I believe puts an end to any of the relevant principles of Erie R. Co. v. Tompkins and Guaranty Trust Co. of New York v. York.

I would reverse and remand for a new trial.