COMMONWEALTH *vs.* FREDERICK W. ENWRIGHT.

Suffolk.    March 24, 1927. — April 5, 1927.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Libel. Practice, Criminal,* Failure to call witness, Requests for instructions, Charge to jury, Exceptions. *Evidence,* To identify subject of libellous cartoon.

A part of an alleged criminal libel set forth in an indictment was a picture of a prisoner in a cell, dressed in a striped suit with a ball and chain attached to one of his feet, and outside the cell door an armed attendant, the words "Curley the Thug" printed in large type directly over the picture of the prisoner, and under the picture a statement that James M. Curley, former mayor, "learned to hit from the rear while serving a term in jail for a serious criminal offence." At the trial, a witness who had known Curley for thirty years was shown the picture and testified, subject to the defendant's exception, that he understood "Ex-Mayor Curley" was designated by it; that the differences between the facial characteristics of the cartoon and those of Curley were considerable, referring particularly to certain designated features. In the course of the testimony of the witness, Curley, in response to a request by the district attorney, had stood in the court room. In cross-examination, the witness testified that each of the features and characteristics of the face and head in the cartoon differed from those of Curley. In redirect examination, subject to an exception by the defendant, the witness testified that, taking the picture as a whole, there was a suggestion of Curley's appearance. *Held,* that the evidence excepted to was admissible.

At the trial above described, the district attorney did not call Curley as a witness, although he was in the court room during the greater part of the trial. The defendant offered no evidence tending to prove that the ball and chain and the prison guard were true representations of Curley in prison. The Commonwealth undertook to meet a defence

of truth by evidence of malice, and also, in putting in its own case, introduced evidence tending to prove the truth of some of the alleged libellous statements, and the untruthfulness of others. The judge refused to rule at the request of the defendant that the "unexplained failure of Curley to testify and to deny the truth of the statements contained in each of the articles set forth in the indictment may be regarded by the jury as tending to show a concession of the truth of the facts stated in each of the aforesaid articles." *Held,* that the ruling could not properly have been given.

In his charge, at the trial above described, the judge said: "And so the trial of this case is in the hands of the district attorney; he can call any person he desires, he can summon any person whom he thinks has knowledge of the facts, and in his discretion and on his honor he puts on the witnesses whom he thinks will help you. If he chose to put on Curley, well and good; if he did not put him on, well and good. Curley, I understand from the statements of counsel, has been in this court room the greater part of the time that we have taken. He was available to the Commonwealth or to the defence as a witness." The defendant did not specify objections to such instructions at the trial, but contended that the request above described brought the matter to the attention of the trial judge in such a way that the jury should have been told when and under what circumstances an unfavorable inference may be drawn against one who fails to produce a witness. *Held,* that

(1) It could not be held on the record that the matters called to the attention of the judge in the request required him to give further general instructions on the subject;

(2) The instructions quoted were not misleading nor incorrect statements of the law;

(3) The charge did not prevent the jury from drawing such inferences as they thought proper from the failure of the Commonwealth to call Curley;

(4) It was not shown that the judge erred.

INDICTMENT, found and returned on November 12, 1926, charging criminal libel in two counts.

In the Superior Court, the indictment was tried before *Bishop,* J. Material evidence and exceptions saved by the defendant are described in the opinion. The jury found specifically that each of the articles set forth in the two counts of the indictment was "criminally libelous apart or aside from the use of the words 'thug' and 'thuggery'," and found the defendant guilty. The defendant alleged exceptions.

*M. L. Sullivan,* for the defendant, submitted a brief.

*D. J. Lyne,* Assistant District Attorney, for the Commonwealth.

SANDERSON, J.  The defendant was convicted on both counts of an indictment, charging the publication of libels upon one James M. Curley, in a newspaper called The Boston Telegraph.  Besides the printed matter, a picture, of a prisoner dressed in a striped suit with a ball and chain attached to one of his feet and outside the cell door an armed attendant, was shown.  Each of the articles contained the words "Curley the Thug" printed in large type directly over the picture of the prisoner.  Under the picture was a statement that James M. Curley, former mayor, "learned to hit from the rear while serving a term in jail for a serious criminal offence."

The defendant testified that the words above the picture were put in at his direction; that he wrote what appeared under it; and that this printed matter referred to James M. Curley.  He also testified that he gave directions for the drawing of a picture of a man in jail with a ball and chain and stripes; but that the cartoon was symbolic and not intended to be a picture of James M. Curley.  As a part of the Commonwealth's case, a witness who had known Curley for thirty years was shown the picture and testified, subject to the defendant's exception, that he understood "Ex-Mayor Curley" was designated by it; that the differences between the facial characteristics of the cartoon and those of Curley were considerable, referring particularly to certain designated features.  After testifying in cross-examination that each of the features and characteristics of the face and head in the cartoon differed from those of Curley, the witness testified in redirect examination, subject to the defendant's exception, that taking the picture as a whole there was a suggestion of James M. Curley's appearance.  Before this testimony was offered, Curley stood up in the court room at the request of the district attorney.  The burden was on the Commonwealth to prove that the libel was published of and concerning James M. Curley.  *Hanson* v. *Globe Newspaper Co.* 159 Mass. 293.

In deciding whether the cartoon was intended to depict Curley, the jury could consider the parts of the publication above and below the picture, as well as its resemblance or

lack of resemblance to the individual, from such observation of him as they could get in the court room, but they also were entitled to hear the evidence offered in the case. It might be that a person well acquainted with Curley, who had seen him with such changes of expression as come over a face in varying moods and under diverse circumstances, could see in the cartoon things to suggest the appearance of this man which would not appear to the jury upon a superficial comparison. "Every person is competent to express an opinion on a question of identity as applied to persons." *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 133. This kind of evidence is received "because of the impossibility of reproducing the numerous particular facts upon which they are founded." *Jenkins* v. *Weston*, 200 Mass. 488, 493. It is evident from the whole testimony of the witness that his observations and impressions could not be fully and accurately reproduced by descriptive details. "The extent to which particulars may be summed up in a general expression is a matter involving more or less discretion, and cannot be disposed of by the suggestion that the general expression involves the conclusion which the jury is to draw." *Mulhall* v. *Fallon*, 176 Mass. 266, 267.

In *Goodrich* v. *Davis*, 11 Met. 473, the court, in referring to testimony of witnesses called by the plaintiff to the effect that they understood the libellous publication to apply to the plaintiff, said, at page 484: "Evidence of this character has been often received. Indeed, in some cases, as those of libels by signs or pictures, it would seem to be absolutely necessary to resort to this species of evidence, to show to the jury the application of the libel to the plaintiff." Evidence of a similar nature was held to be properly admitted in *Miller* v. *Butler*, 6 Cush. 71. And in *Leonard* v. *Allen*, 11 Cush. 241, it was held that, when an alleged slander is made in part by signs and gestures, it is competent to permit witnesses to state what they understood the defendant to mean, and to whom he intended the signs and gestures to apply. This conclusion is not inconsistent with the rule stated in *Snell* v. *Snow*, 13 Met. 278, that in an action for slander, if the language is capable of being stated fully to a jury and of being

fully understood by them, there is no occasion for opinion evidence; or with the ruling made in *Commonwealth* v. *Tucker*, 189 Mass. 457, 486, concerning which the court said it did not appear that the witness could see any better than the jury "which pin was shown in the photograph."

The fact that Curley was in the court room did not as matter of law deprive the Commonwealth of its right to introduce evidence which would have been competent in his absence. By reason of his presence the jury were enabled, to some extent at least, to test the accuracy of the evidence by their own observation. We cannot say that there was error in the admission of the evidence to which objection was made.

The defendant saved an exception to the refusal of the judge to rule that the "unexplained failure of James M. Curley to testify and to deny the truth of the statements contained in each of the articles set forth in the indictment may be regarded by the jury 'as tending to show a concession of the truth of the facts stated' in each of the aforesaid articles." He also saved an exception to the part of the charge set forth in the bill of exceptions referring to the failure of Curley to testify. The judge said: "And so the trial of this case is in the hands of the district attorney; he can call any person he desires, he can summon any person who he thinks has knowledge of the facts, and in his discretion and on his honor he puts on the witnesses who he thinks will help you. If he chose to put on James M. Curley, well and good; if he did not put him on, well and good. James M. Curley, I understand from the statements of counsel, has been in this court room the greater part of the time that we have taken. He was available to the Commonwealth or to the defence as a witness."

The judge also made it clear to the jury that this was an indictment found by the grand jury and that the issue was between the Commonwealth and the defendant; that prosecutions are carried through to preserve the liberties and rights of the people of this Commonwealth; and that the individual alleged to have been libelled could not control

the question whether an indictment should be found or the course of the trial or the disposition of the case.

The defendant offered no evidence tending to prove that the ball and chain and the prison guard were true representations of Curley in prison. As to this part of the alleged libel there was no fact to refute. No duty to call a witness to testify arises until there is something to refute. *Bishop* v. *Pastorelli*, 240 Mass. 104, 107. *Poirier* v. *Terceiro*, 224 Mass. 435, 437.

It could not reasonably have been contended that any inference should be made against the Commonwealth for its failure to call Curley to testify concerning any resemblance between the cartoon and himself, nor to rebut any testimony of the defendant that was immaterial to the issue being tried.

There can be no concession or admission of the truth of facts stated in the presence of another unless "the circumstances are such as to make a reply proper and natural." *Warner* v. *Fuller*, 245 Mass. 520, 528. If made in the course of any judicial hearing, a party could not interfere and deny the statement; "it would be . . . alike inconsistent with decorum and the rules of law." *Commonwealth* v. *Kenney*, 12 Met. 235, 237. The cases which hold that inferences may be made against a party from his failure to testify in refutation of evidence which if believed makes a case against him, cannot apply to the Commonwealth in a criminal prosecution. *Commonwealth* v. *Finnerty*, 148 Mass. 162, 167. *Attorney General* v. *Pelletier*, 240 Mass. 264, 316. *Commonwealth* v. *Sacco*, 255 Mass. 369, 442, 443. Curley was not an adverse party. *Aldrich* v. *Aldrich*, 215 Mass. 164. It is assumed, however, that if the district attorney should unfairly suppress evidence he would thereby subject the case of the Commonwealth to the same adverse inferences as would result from similar conduct by any other party to a cause. *Commonwealth* v. *Ryan*, 134 Mass. 223, 225. *Commonwealth* v. *Min Sing*, 202 Mass. 121, 125, 126.

The case at bar does not come within the principle of the cases in which the witness who could explain facts is said to be peculiarly under the influence of a party or related in

interest to that party.  *Commonwealth* v. *Spencer*, 212 Mass. 438, 451.

All of the evidence is not reported and it is not possible for us to say whether any explanation was made of the failure of either party to call Curley, and, if made, whether, as the matter was left, any inference against the Commonwealth could be made because he was not called.   Upon this ground, if there were no other, the exception to the refusal to give the ruling would have to be overruled.   Furthermore, it appears that the Commonwealth undertook to meet the defence of truth by evidence of malice, and there is nothing in the case to show that Curley could have aided either side by testifying on that issue.   The truth is not a justification if actual malice is proved.   G. L. c. 278, § 8.   In putting in its own case, the Commonwealth introduced evidence tending to prove the truth of some of the alleged libellous statements, and the untruthfulness of others.   When the defendant rested, the district attorney may have decided that the defendant had not introduced sufficient evidence of the truth of all of the alleged libellous matters to make it incumbent upon him to offer further evidence of their untruthfulness, or he may have decided to rely entirely upon the proof of malice to meet the defence of truth.   The instruction requested could not have been given.

But the defendant contends that his exception to the charge should be sustained because the part excepted to was an inadequate if not an erroneous statement of the law; and he relies not upon any specific objection made thereto at the trial, but upon the fact that his request brought the matter to the attention of the trial judge in such a way that the jury should have been told when and under what circumstances an unfavorable inference may be drawn against one who fails to produce a witness.   Requests for instructions in a criminal case must be presented before closing arguments. *Commonwealth* v. *Hassan*, 235 Mass. 26.

The instructions quoted are not misleading or incorrect statements of the law.   "If the defendant desired further instructions upon this part of the case, it was his duty to ask for them."  *Commonwealth* v. *Damon*, 136 Mass. 441,

450.  *Commonwealth* v. *Meserve,* 154 Mass. 64, 75.  *Brick* v. *Bosworth,* 162 Mass. 334, 336.  *Commonwealth* v. *Jewelle,* 199 Mass. 558, 559.  It cannot be said on this record that the matters called to the attention of the judge in the request required him to give further general instructions on the subject.  Moreover, the charge did not prevent the jury from drawing such inferences as they thought proper from the failure of the Commonwealth to call Curley.  They were in effect told that if the district attorney thought that the testimony of any witness would help them he had a duty to call such witness.  Upon this record the defendant has not shown that the judge erred.

Exceptions not argued are treated as waived.  All questions argued have been considered.

*Exceptions overruled.*