COMMONWEALTH *vs.* WILLIAM HARRY SIMPSON.

Worcester.    February 2, 1976. — April 9, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Homicide. Practice, Criminal,* Agreement for immunity from prosecution, Capital case. *Evidence,* Immunized witness, Common criminal enterprise, Admissions and confessions, Prior conviction, Unresponsive answer, Photograph.

A defendant in a criminal trial had no standing to argue that the judge had no authority to grant immunity from prosecution for certain crimes to witnesses who testified against the defendant. [120-121]

Testimony concerning conversations between a participant in a robbery and murder and a defendant in which they planned the robbery, and concerning conversations between them after commission of the crimes relative to a plan to divert attention from themselves as the perpetrators, was admissible at the defendant's trial. [122]

Testimony concerning the statements of a participant in a robbery and murder were properly admitted against the defendant, who engaged knowingly and voluntarily in the conversation, as admissions by silence. [123]

Any delay in providing copies of the criminal record of a prosecution witness to the defendant was without prejudice where the witness did not become available until she was arrested the night before she testified, and any delay with respect to a second prosecution witness was without prejudice where proof of certain of her convictions would have added nothing to crimes by her otherwise made known at the trial. [123-124]

Findings by the trial judge on voir dire at a murder trial that the defendant went voluntarily to a police station, gave a written exculpatory statement there while he was not a suspect, and was not taken into custody until later warranted admission of the statement in evidence, although no Miranda warnings were given. [124-125]

Findings by the trial judge on voir dire at a murder trial that the defendant voluntarily and knowingly waived his Miranda rights with respect to an inculpatory written statement to the police were warranted by the evidence, and the statement was properly admitted in evidence. [125]

At a criminal trial, there was no error in the judge's refusal to strike a witness's answer which was only responsive in part, in the absence of a motion to strike the unresponsive part [125]; the judge did not abuse his discretion in declining to instruct the jury to disregard certain trivial evidence which he had struck as not responsive. [125-126]

At the trial of a defendant convicted of murder in the first degree, there was no abuse of discretion in admitting in evidence color photographs of the deceased victim. [126]

Upon review of a capital case under G. L. c. 278, § 33E, the record justified a verdict of guilty of murder in the first degree, and there was no occasion to order the entry of a verdict of a lesser degree of guilt or a new trial by reason of the subsequent allowance of a plea of guilty to murder in the second degree by one who participated in the murder with the defendant. [126-127]

INDICTMENTS found and returned in the Superior Court on May 15, 1974.

The cases were tried before *Brogna*, J.

*Edward P. Healy* (*Dennis J. Brennan* with him) for the defendant.

*John M. O'Connor*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.    The defendant appeals, pursuant to G. L. c. 278, §§ 33A-33G, from convictions of murder in the first degree, armed robbery, and breaking and entering in the daytime. He also appeals from the denial of motions for a new trial. There was no error.

The jury could have found that around sunrise on the morning of March 17, 1974, the defendant and one Wardell Washington broke into an apartment at 51 Wellington Street in Worcester with the intent to rob the occupant, one Thomas Morris. Morris died from knife wounds inflicted by Washington while the defendant was also striking him repeatedly with a baseball bat and a hammer. They took approximately $28 from Morris. They then returned to Washington's apartment in the same building, changed their clothes, purchased and took heroin, made up a story to tell the police, and notified the police, planning to divert attention from themselves.

1. The defendant argues that the judge had no authority to grant immunity from prosecution for certain crimes to

two women who testified against him and that, therefore, their testimony should not have been admitted. The procedures set forth in G. L. c. 233, § 20F, concerning the grant of immunity to witnesses, were not followed, but we need not decide here whether G. L. c. 233, § 20F, establishes the exclusive procedure by which a Superior Court judge may grant immunity to a witness on request of a district attorney[1] or what may be the consequences to a witness who relies on a purported but unauthorized grant of immunity.

The defendant has no standing to argue that the testimony of the two purportedly immunized witnesses was the product of improper grants of immunity. The privilege against self-incrimination was a personal privilege of these witnesses, not assertable by the defendant. *Commonwealth v. Shaw,* 4 Cush. 594, 595 (1849). See *Goldstein* v. *United States,* 316 U.S. 114, 121 (1942), and cases cited in n.11; *United States* v. *Mayes,* 512 F.2d 637, 649 (6th Cir.), cert. denied, 422 U.S. 1008 (1975); *United States* v. *Foster,* 478 F.2d 1001, 1003-1004 (7th Cir. 1973). He would have had no right to object if a witness had been compelled to testify after the privilege had been validly asserted. *United States* v. *Dowdy,* 486 F.2d 1042, 1043 (5th Cir. 1973), cert. denied, 415 U.S. 992 (1974). *Bowman* v. *United States,* 350 F.2d 913, 916 (9th Cir. 1965), cert. denied, 383 U.S. 950 (1966). See K.B. Hughes, Evidence § 145, at 137-138 (1961). Similarly, he had no right to object even if the testimony were elicited by a purported but unauthorized grant of immunity. *United States* v. *Braasch,* 505 F.2d 139, 146 (7th Cir. 1974), cert. denied, 421 U.S. 910 (1975). *United States* v. *Leonard,* 494 F.2d 955, 972-973 (D.C. Cir. 1974). *United States* v. *Lewis,* 456 F.2d 404, 408-410 (3d Cir. 1972). *Lopez* v. *Burke,* 413 F.2d 992, 994 (7th Cir. 1969). But see *Ellis* v. *United States,* 416 F.2d 791, 798-800 (D.C. Cir. 1969).

---

[1] Recently, we noted the existence of this unresolved question but were not called on to answer it. *Grand Jurors for Middlesex County for the Year 1974* v. *Wallace,* 369 Mass. 876, 879 n.4 (1976).

2. Testimony concerning what Washington said and did in the defendant's presence before and just after the commission of the crimes was admitted properly. Two women, who shared Washington's apartment with Washington and the defendant, testified concerning conversations between Washington and the defendant in which they planned the robbery and concerning conversations between Washington and the defendant after the robbery and murder had been committed.[2] This testimony was admissible under that exception to the hearsay rule which permits the statements of one person engaged in a common enterprise, made during the course of and in pursuance of the enterprise, to be admissible against all persons engaged in that common undertaking. *Commonwealth* v. *Flynn*, 362 Mass. 455, 477 (1972). *Commonwealth* v. *Dussault*, 2 Mass. App. Ct. 321, 326 (1974). *Commonwealth* v. *Dominico*, 1 Mass. App. Ct. 693, 717 (1974).

Although before admitting the evidence the judge did not make an express finding that a common enterprise existed (and the defendant made no objection to his failure to do so), such a finding is plainly implied because of the circumstances of the conversations. See *Commonwealth* v. *MacKenzie*, 211 Mass. 578, 580 (1912). The joint enterprise had not ended when Washington and the defendant returned to the apartment after committing the crimes. *Krulewitch* v. *United States*, 336 U.S. 440, 442-444 (1949). They then devised and undertook to implement a plan to divert attention from themselves as the ones who committed the crimes. They reported to the police that they had seen two men fleeing from the victim's apartment. The defendant did not object to the judge's instructions to the jury concerning the use of Washington's testimony against the defendant, nor did he request any further instructions on that topic.

---

[2] There was no error when, in the course of his opening statement to the jury, the prosecutor referred to Washington and his statements. The prosecutor was describing what he intended to prove.

Although the parties have argued the admissibility of testimony concerning Washington's statements and acts under the joint conspirator exception to the hearsay rule, and the judge, by his instructions to the jury at one point, seems to have accepted the applicability of that hearsay exception, Washington's statements were admissible against the defendant in any event as admissions by silence. See *Refrigeration Discount Corp.* v. *Catino,* 330 Mass. 230, 237-238 (1953); *Warner* v. *Fuller,* 245 Mass. 520, 528 (1923); *Commonwealth* v. *Funai,* 146 Mass. 570, 571 (1888); *Commonwealth* v. *Call,* 21 Pick. 515, 521-522 (1839); 4 J. Wigmore, Evidence §§ 1071-1072 (Chadbourn rev. 1972). The defendant was engaged knowingly and voluntarily in a conversation with another, and what was said and done by each in the other's presence, bearing on a material issue in the case, was admissible. *Boston & Worcester R.R.* v. *Dana,* 1 Gray 83, 104 (1854). *Commonwealth* v. *Kenney,* 12 Met. 235, 237 (1847). 7 J. Wigmore, Evidence § 2115 (3d ed. 1940).

3. The defendant claims that the delay in providing copies of the criminal records of the two women who testified for the prosecution hindered his attempt to impeach them with proof of prior convictions. Although his motion for production of criminal records of the Commonwealth's witnesses had been allowed five days earlier, the probation records of these witnesses were not furnished to the defendant until the day they testified. As to one of these witnesses, that circumstance is understandable because she did not become available to the prosecution until she was arrested the night before she testified. Our analysis of the defendant's argument has been hindered by the absence of the witnesses' probation records in the record before us. The defendant should have requested that they be marked as exhibits for identification.

The judge offered the defendant a voir dire, if he requested it, so that he might interrogate each witness concerning her record of criminal convictions. The judge also permitted the defendant to cross-examine these witnesses

as to their prior convictions without any record of the convictions in hand.

There can be no error as to the first witness. The defendant made no attempt to impeach her by the fact of prior convictions. He did not request a voir dire. We have no reason to know of any such convictions.

The second witness was impeached by three convictions in the Central District Court of Worcester of being a disorderly person. The judge ruled that two convictions in courts in Boston could not be used because the witness could not recall enough of the circumstances to establish that they were properly admissible for impeachment purposes. The voir dire conducted with this second witness indicated that she may have been convicted in Boston on separate occasions of possession of heroin and of prostitution.

Assuming that there were records of convictions of these crimes which were admissible for the purposes of impeaching this witness, there was no prejudicial error. This witness (as well as the first one) admitted to heroin addiction and to prostitution. The jury were also advised that, after a hearing, the judge had granted her immunity from prosecution for murder, robbery, breaking and entering, being an accessory to these crimes, and unauthorized use of drugs and prostitution. Proof of the suggested convictions in Boston would have added nothing to what appeared at the trial.

The defendant did not ask for a continuance in order to check the records in Boston. Even now the defendant does not argue that investigation has shown that either of the Boston convictions was admissible to impeach the second witness.

4. The defendant challenges the denial of his motions to suppress statements he made to the police.[3] During the morning following the commission of the crimes, the de-

---

[3] The defendant sought unsuccessfully to suppress the results of a positive benzidine test for the presence of blood on his hands, but, before us, he does not challenge the judge's ruling on that motion.

fendant and others went to a local police station voluntarily. There the defendant signed a written statement in which he reiterated the fabricated story that he and Washington had found the victim's body. He stated that they had become suspicious when they saw two men run from an alley beside the apartment building where the victim lived and gave a general description of the two men. Later benzidine tests were given to the defendant and others. No Miranda warnings were given before the defendant made this statement or submitted to the benzidine test.

The judge conducted a voir dire concerning the admissibility of the defendant's statement and the results of the benzidine test. He found that the defendant and others went to the police station voluntarily, that he gave his statement voluntarily as part of a normal police investigation, and that the defendant was not a suspect and was not taken into custody until the benzidine test showed the presence of blood on his hands. The judge ruled that Miranda warnings were not required. The evidence warranted these findings, and we see no basis for reversing the judge's decision to admit the first statement.

5. At 7:30 P.M. on the day of the murder, the defendant gave a second, written statement to the police in which he admitted his involvement in the crimes. The judge conducted another voir dire concerning the admissibility of this written statement. There was evidence that the defendant volunteered to make that statement and received Miranda warnings prior to making it. The judge's findings that the defendant voluntarily and knowingly waived his Miranda rights and admitted his participation in the crimes were warranted by the evidence.

6. The judge's refusal to strike a witness's answer which was only partly responsive was not error because no request was made to strike only the unresponsive portion of the answer. In any event, there was no harm because subsequent testimony, to which there was no valid objection, covered the subject matter of that portion of the answer which was not responsive.

7. The judge did not abuse his discretion in declining

to instruct the jury to disregard certain evidence which the judge struck as not responsive. The stricken testimony dealt with a trivial, nonprejudicial fact which could have been inferred from other evidence. Moreover, the defendant did not claim an exception to the judge's refusal to instruct.

8. There was no abuse of discretion in admitting color photographs of the deceased victim. *Commonwealth* v. *Torres,* 367 Mass. 737, 742 (1975). The photographs were relevant to the issue of extreme atrocity and cruelty as a possible basis for conviction of murder in the first degree. See *Commonwealth* v. *Martin,* 357 Mass. 190, 193 (1970); *Commonwealth* v. *Rogers,* 351 Mass. 522, 531, cert. denied, 389 U.S. 991 (1967). Also the photographs were relevant to the question whether blood from the victim could have gotten on the defendant, who reacted positively to a benzidine test. *Commonwealth* v. *Lamoureux,* 348 Mass. 390, 392-393 (1965).

9. Finally, the defendant argues forcefully that we should exercise our power under G. L. c. 278, § 33E, to direct that the defendant's degree of guilt be reduced to the second degree. He rests this argument largely on the fact that subsequently Washington was allowed to plead guilty to murder in the second degree. The evidence tended to show that Washington was the leader in the commission of crimes in which the defendant willingly participated. We do not know, however, what evidence was available and admissible against Washington at the time his plea was accepted.[4] The record which comes before us, all of

---

[4] From the Commonwealth's brief, it appears that in the course of his trial the defendant wished to plead guilty to murder in the second degree; that the assistant district attorney would not recommend such a plea but would not object if the judge chose to accept such a plea; and that the judge would not take such a plea without the affirmative recommendation of the assistant district attorney. About five weeks later, Washington wished to change his plea to guilty of murder in the second degree; the same assistant district attorney declined to give an affirmative recommendation that such a plea should be accepted but stated he would not object to the acceptance of such a plea; and a different judge then accepted the plea of guilty of murder in the second degree. The only significant difference between the two situations seems to be the difference in attitude of the two trial judges.

which we must consider in performing our duty under § 33E, is the record of the proceedings involving the defendant. Under § 33E, in these circumstances, we cannot consider allegedly unfairly disparate sentences imposed on the defendant and another. The test we make under § 33E must be made on the appellate record. On that record, a verdict of guilty of murder in the first degree was justified, and there is no occasion to direct the entry of a verdict of a lesser degree of guilt or to order a new trial.

*Judgments affirmed.*