COMMONWEALTH *vs.* PERRY HOOKS.

Suffolk. October 4, 1977. — May 23, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Constitutional Law*, Admissions and confessions, Waiver of constitutional rights, Assistance of counsel. *Waiver. Homicide. Joint Enterprise. Error,* Whether error harmful. *Practice, Criminal,* Charge to jury, Capital case, Assistance of counsel, Argument by prosecutor, Sentence.

Evidence at a hearing on a motion to suppress statements made by the defendant to police after his arrest warranted findings that the defendant was not unduly influenced by marihuana when he made the statements, and that he validly waived his constitutional rights. [287-290]

At the trial of an indictment charging the defendant with murder in the first degree on a theory of felony murder, the judge was not required to charge the jury with respect to lesser included offenses where there was no evidence which would warrant a finding that the defendant was guilty of a lesser included offense. [290-292]

---

On appeal by a defendant from his conviction of murder in the first
degree, this court declined to exercise its powers under G.L. c. 278,
§ 33E, where statements made by the defendant were properly admit-
ted in evidence despite testimony by an attorney that he had attempted
in vain to notify police to suspend questioning of the defendant until he
arrived at the police station [292-295]; where the prosecutor's im-
proper remarks to the jury during his closing argument were harmless
beyond a reasonable doubt [295-297]; and where justice did not re-
quire the entry of a verdict of a lesser degree of guilt by the fact that
other participants in the crime either were not indicted or were per-
mitted to plead guilty to lesser offenses [297-299].

INDICTMENTS found and returned in the Superior Court
on January 12, 1976.

The cases were tried before *Hallisey*, J.

*Louis W. Maples* (*Seth H. Langson* with him) for the
defendant.

*Daniel Mullane*, Assistant District Attorney, for the Com-
monwealth.

LIACOS, J.   The defendant appeals, pursuant to G. L.
c. 278, §§ 33A-33G, from convictions on indictments of
murder in the first degree, armed robbery, and armed as-
sault in a dwelling house with intent to commit a felony. He
claims error in the denial of his motion to suppress state-
ments made by him to the police after his arrest, and in the
failure of the trial judge to instruct the jury on lesser in-
cluded offenses. The defendant also seeks extraordinary re-
lief, pursuant to G. L. c. 278, § 33E, in the nature of a new
trial or entry of verdict of a lesser degree of guilt. We find no
error and no occasion for exercising our extraordinary
powers under § 33E.

We briefly summarize the events leading up to the de-
fendant's arrest, as such events were recounted at the trial.
Facts will be described in greater detail as necessary, in the
context of our discussion of the various arguments raised by
the defendant.

According to testimony elicited by the Commonwealth, the defendant came on a group of friends congregated at a ball park in Jamaica Plain, about 9:30 P.M., on November 18, 1974. The defendant joined the group and entered an ongoing discussion concerning the commission of a robbery. The defendant decided where and how the robbery was to take place. The group entered a car, and the defendant directed the driver to an address in the Mission Hill project in Roxbury. Two of the group stayed in the car while the defendant and four others walked the short distance to the apartment of the victim, Thomas Valentine. The defendant remained outside while the others went inside the apartment building. There was evidence that the persons entering the building were armed with a knife and a gun. The victim's wife opened the door in response to a knock, and three of the four members of the group who had entered the building rushed into the apartment. In the course of several struggles inside the apartment, the victim was beaten, stabbed, and fatally shot. The three members of the group removed stereo equipment and other property from the apartment, joined the defendant outside, and loaded the property into the car. The entire group then returned to Jamaica Plain where the property was divided among them.

The defendant's testimony regarding these events was markedly different from the Commonwealth's version. He testified that he met the group in the ball park, and they offered him a ride when he said he was going to Mission Hill. When they arrived, the defendant testified, he left the others and went looking for a certain drug dealer, known only as "Barefoot." He testified he returned to the car, and a short time later some members of the group returned, and loaded stereo equipment into the car. The defendant denied receiving any stolen property, and testified that he returned immediately to his apartment. More than a year later, on December 7, 1975, the defendant was in his apartment when several police officers came to the apartment, about 10:30 A.M., pursuant to an arrest warrant, handcuffed him, and took him to a police station where he was formally

booked. The defendant made incriminating statements at the police station which were tape recorded.

1. The first assignment of error which we consider involves the trial judge's decision to deny the defendant's motion to suppress the statements made by the defendant to the police. The defendant contends that during the questioning following his arrest on December 7, 1975, he was under the influence of marihuana and was thus unable to comprehend the warnings given to him by the police regarding his constitutional rights. He also contends that he had requested the presence of his attorney prior to the tape recording of his statement, which was made without an attorney present.

Detective Francis J. McCarthy, one of the arresting police officers, and the defendant both testified at a suppression hearing held on May 11, 1976. After hearing the testimony and argument, the judge made findings of fact in which he made the following determinations. The defendant was arrested at his apartment about 10:30 A.M., on December 7, 1975, by Detective McCarthy and other police officers. He was taken to District 2 police station, where he was advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). He was again advised of his Miranda rights at the beginning of the interrogation.

The judge found that the defendant was allowed to make two telephone calls, but the judge disbelieved the defendant's testimony that one of the calls was an effort to reach and obtain counsel. The judge further found that no counsel was reached by the defendant on December 7. This finding was based in part on the circumstance that the defendant did not call the attorney allegedly retained to testify at the suppression hearing, despite the defendant's testimony that an attorney had been obtained on his behalf. The judge also based his finding on the circumstance that the defendant's brother, to whom at least one of the telephone calls was made, was not called by the defendant to testify at the hearing.

The judge found the defendant to be intelligent, noting that he had graduated from high school and had attended college for a brief period of time. The judge disbelieved the defendant's testimony that he was under the influence of marihuana to such an extent that he was unable intelligently and voluntarily to waive his rights. That finding was based in part on the testimony of Detective McCarthy that the defendant appeared to be in complete control of his faculties during the arrest and interrogation, and in part on the judge's comparison of the defendant's manner of expression and communication at the hearing with that evidenced by the tape recording of his statements on December 7. The judge found that the defendant understood his constitutional rights and that he had knowingly, voluntarily, and intelligently waived them. This finding was partially based on statements recorded on tape made by the defendant to the police at the conclusion of the discussion regarding the murder where the defendant emphasized the voluntariness of his remarks and offered to discuss another crime with which he had been charged.

The controlling principles of law with regard to the issue of waiver were thoroughly set out in the judge's rulings of law which accompanied his findings of fact. The judge started from the proposition, as do we, that the court will indulge every reasonable presumption against waiver of constitutional rights. *Commonwealth* v. *Hosey*, 368 Mass. 571, 577 (1975). Even though the evidence clearly established that the prophylactic Miranda warnings were carefully read to the defendant by the police before interrogation began, the Commonwealth must still establish that the right to remain silent and the right to counsel were "voluntarily, knowingly and intelligently" waived by the defendant. *Miranda* v. *Arizona, supra* at 444. *Commonwealth* v. *Hosey, supra* at 574. The burden of proof is on the Commonwealth to establish a waiver if interrogation takes place without an attorney.[1] *Miranda, supra* at 475. *Hosey, supra*

---

[1] The question has remained open whether this burden may be met if the preponderance of the evidence standard is satisfied, or whether a more

at 576. Special care must be taken to ensure that a defendant has not unknowingly relinquished his constitutional rights while under the influence of drugs or alcohol. *Hosey, supra* at 578-579. The influence of drugs or alcohol does not, however, automatically invalidate a waiver. *Commonwealth* v. *Tisserand*, 5 Mass. App. Ct. 383, 388-389 (1977). The totality of the circumstances leading up to the waiver must be examined, including the conduct and characteristics of the accused and the details of the interrogation. *Hosey, supra* at 574-575. *Commonwealth* v. *Daniels*, 366 Mass. 601, 606 (1975).

The judge disbelieved the defendant's testimony that he was unduly influenced by marihuana at the time he waived his rights. This decision was based on the first-hand observation by the judge of the witness's demeanor and by a weighing of the evidence presented. We will not disturb such determination based on the evidence, nor will we disturb the judge's subsidiary findings if warranted by the evidence. *Commonwealth* v. *Sires*, 370 Mass. 541, 544 n.1 (1976). In the circumstances of this case, we believe that the judge was justified in concluding, based on the evidence adduced at the suppression hearing, that the defendant validly waived his constitutional rights. Similarly, the judge was

---

exacting standard, such as beyond a reasonable doubt, is applicable to the demonstration of a valid waiver. This question was avoided in *Commonwealth* v. *Hosey*, 368 Mass. 571, 577 n.2 (1975), and subsequent cases have likewise found the resolution of the issue unnecessary in the circumstances presented, see *Commonwealth* v. *Sires*, 370 Mass. 541, 544 n.2 (1976). See also *Commonwealth* v. *Howard*, 4 Mass. App. Ct. 476, 479 n.4 (1976). The Appeals Court, in *Commonwealth* v. *Roy*, 2 Mass. App. Ct. 14, 18 (1974), has held that the preponderance standard applied to the waiver determination, citing *Lego* v. *Twomey*, 404 U.S. 477, 489 (1972), and *Commonwealth* v. *White*, 353 Mass. 409, 423 n.3 (1967), cert. denied, 391 U.S. 968 (1968).

The question is not raised in the case before us. Despite the trial judge's assumption, stated at the outset of the hearing and in his rulings of law, that the preponderance of the evidence standard was applicable to the burden of showing a valid waiver, the defendant raised no objection at the hearing on the motion to suppress to the use of this standard, nor does he claim error on this ground on appeal.

warranted in finding, based on the evidence presented at the hearing, that there was no effort to obtain a lawyer and that no lawyer was reached. Cf. point 3 A *infra*. We therefore conclude that there was no error in denying the motion to suppress.

2. The defendant assigns as error the failure of the trial judge "to instruct the jury on the lesser offenses and [to include] proper instructions on murder in the second degree." We note initially that it was the defendant's responsibility to request an appropriate charge if he felt the charge given was inadequate. *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 304 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972). *Commonwealth* v. *Enwright*, 259 Mass. 152, 158-159 (1927). Cf. *Commonwealth* v. *Barton*, 367 Mass. 515, 517-518 (1975) (the defendant, having made no objection nor taken exception to the charge, brings nothing for review; however, the charge may be reviewed to determine if there was substantial risk of miscarriage of justice). Compare *Commonwealth* v. *Martin*, 369 Mass. 640, 644-646 (1976); *Commonwealth* v. *Benders*, 361 Mass. 704, 706-707 (1972). The record in this case discloses that the defendant made no requests for instructions prior to the charge. The judge gave the defendant's counsel an opportunity, in a bench conference immediately after the charge had been given, to request that further instruction be given to the jury. At the judge's suggestion, the defendant's counsel took exception to the failure to charge on lesser included offenses, but made no specific suggestions as to the nature of any further charge that he wished to be given. Nor did counsel suggest at that time that the judge's instruction regarding a verdict of murder in the second degree was inadequate. Nor does he now specify what lesser offenses should have been the subject of further instructions, or in what way the judge's charge on murder in the second degree was inadequate.

Even if we ignore the lack of adequate notice to the trial judge, we believe that there was no error for the reason that

the judge was correct in excluding from his charge any reference to lesser included offenses. The only theory advanced by the Commonwealth to support a conviction of murder in the first degree was that of felony murder. G. L. c. 265, § 1.[2] The crimes in the commission of which the homicide in the instant case took place, and for which the defendant was indicted, were armed robbery, and armed assault in a dwelling with intent to commit a felony. See G. L. c. 265, §§ 17, 18A, respectively. Both crimes are punishable with life imprisonment.

The judge thoroughly instructed the jury as to the elements of these two crimes and as to the relationship between these crimes and the felony murder provision of G. L. c. 265, § 1. He also carefully instructed the jury with regard to the culpability in felony murder of a person, such as this defendant, who allegedly planned the robbery and helped to execute it by acting as lookout, all with the knowledge that his accomplices were armed. See *Commonwealth* v. *Balliro*, 349 Mass. 505, 511 (1965). Cf. *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 792-794 (1975). The evidence adduced at trial clearly established that an assault in a dwelling and an armed robbery had taken place, and that a homicide had occurred during the commission of those crimes. The defendant testified that he knew that one member of the group who traveled with him in the car to the Mission Hill project was armed with a gun. See *Commonwealth* v. *Ferguson*, 365 Mass. 1, 8 (1974). There was also evidence from one witness that the defendant had provided this gun to one of the persons who entered the victim's apartment, and that he knew one of the other persons to be armed with a knife. The jury could not

[2] General Laws c. 265, § 1, provides: "Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree. Petit treason shall be prosecuted and punished as murder. The degree of murder shall be found by the jury."

rationally have found that the defendant was guilty of a lesser included offense under the indictments for armed robbery or armed assault in a dwelling.

We have said that a judge "is not obliged to charge a jury concerning a lesser included offence if the evidence would not warrant a finding that the defendant was guilty of that offence." *Commonwealth* v. *McKay*, 363 Mass. 220, 228 (1973). In *McKay*, there was no "rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Id.*, quoting from Model Penal Code § 1.07 (5) (Proposed Official Draft, 1962). It follows that the defendant was either guilty of felony murder, or not guilty of murder at all. The judge in the case before us explicitly and properly applied this principle to the evidence presented at trial. See *Commonwealth* v. *Dickerson*, 372 Mass. 783, 795-797 (1977).

3. The defendant seeks extraordinary relief in the nature of a new trial or entry of a verdict of a lesser degree of guilt pursuant to our powers under G. L. c. 278, § 33E. Section 33E, as amended through St. 1974, c. 457, provides that in a capital case the entry of an appeal "in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (*a*) order a new trial or (*b*) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence." The defendant presents three specific grounds for relief under § 33E which we now consider in turn.

A. *Admission of the defendant's tape recorded statements to police.* We rejected under point 1, *supra*, the defendant's contention that the judge erred in denying a motion to suppress statements made to the police after the defendant's arrest on December 7, 1975. The defendant had argued that he was under the influence of marihuana, and thus unable validly to waive his constitutional rights, and that he had

been denied his request to see his then attorney, Mr. Richard Gordon, before being questioned. Mr. Gordon was not subpoenaed to the hearing on the motion to suppress and did not appear at that hearing. The failure of Mr. Gordon to appear and to give testimony was one of the grounds on which the judge disbelieved the defendant's testimony that he had tried to contact an attorney.

Mr. Gordon did, however, appear at trial. He testified: (1) That about 11 A.M. on the day of the defendant's arrest Mr. Gordon had been reached by telephone in his office and told of the arrest, and (2) that Mr. Gordon immediately placed a telephone call to District 2 police station, where the defendant was being held, and he also made two telephone calls to Boston police headquarters. The purpose of all three calls was to advise the police that the defendant was his client, that he, Mr. Gordon, was at his office on Cape Cod but intended to return to Boston as soon as possible, and that it was his wish that no one ask the defendant any questions nor take any statements from him. Mr. Gordon testified that he spoke only with the persons who answered the telephones at the police stations, that he did not know the identities of those persons, nor did he know whether such persons were police officers or civilian switchboard operators. Mr. Gordon arrived at District 2 about 6 P.M., on December 7, by which time the defendant had already made his statements to the police.

The defendant now argues that at trial the testimony of his former attorney, Mr. Gordon, established that the defendant was unconstitutionally denied the assistance of counsel by the failure of the police to suspend questioning until the attorney arrived, or at least to inform the defendant that his attorney had contacted the police and had asked that questioning be suspended pending his arrival. To support this argument, our decisions in *Commonwealth* v. *Mahnke*, 368 Mass. 662 (1975), cert. denied, 425 U.S. 959 (1976), and *Commonwealth* v. *McKenna*, 355 Mass. 313 (1969), are cited. In *Mahnke*, we held that a defendant's statement to the police could not be used substantively

because of the deliberate action of the police in thwarting the attorey's attempts to reach the police officer in charge of the investigation and in failing to apprise the defendant of his lawyer's efforts. 368 Mass. at 691-692. In *McKenna,* we held that the defendant was denied his right to the assistance of counsel because of the deliberate failure of the responsible police officer to inform the defendant that his attorney was available and had requested that he be present when any questioning took place. 355 Mass. at 324-325. The defendant in the case at bar believes these cases to be controlling in view of Mr. Gordon's testimony, and in view of the testimony of the defendant's girl friend to the effect that the defendant, in the presence and hearing of the arresting and interrogating officers, had asked her to call Mr. Gordon.

We disagree. We note that no attempt was made by defense counsel to obtain a reconsideration at trial of the motion to suppress based on the availability of Mr. Gordon to testify. The defendant did not call Mr. Gordon to the stand until after the defendant's recorded statements and the transcripts of them had been admitted into evidence. The defendant did not object to the admission of the recorded statements on the ground that there was evidence available which would show that they had been unconstitutionally obtained, nor did he suggest to the judge that he be given the opportunity to present such evidence. No exceptions were taken. Nor was the issue raised or exceptions taken when transcripts of the recorded statements were admitted on cross-examination of the defendant. "We have held on numerous occasions that 'an assignment of error under G. L. c. 278, §§ 33A-33G, brings nothing to this court unless based on a valid exception.' [Citations omitted.] That rule applies equally to capital cases within the definition of G. L. c. 278, § 33E." *Commonwealth* v. *Hall,* 369 Mass. 715, 717 (1976). No doubt aware of these principles, the defendant in his brief has "waived" his assignment of error which raises the question of the effect of Mr. Gordon's testimony. Although we nevertheless consider

the defendant's contentions pursuant to our extraordinary powers under § 33E, see *Commonwealth* v. *Nassar*, 351 Mass. 37, 49 (1966), we are not unmindful of the detrimental effect of the defendant's trial conduct on the ability of the trial judge to ensure the fair and efficient administration of justice.

Unlike the circumstances disclosed in *Mahnke* and *McKenna*, there was no indication here that a police officer or other person in authority deliberately or negligently withheld from the defendant the facts concerning Mr. Gordon's telephone calls to the police stations. Absent a showing that an appropriate person in authority received the attorney's request to suspend questioning and deliberately or negligently failed to advise the defendant of this fact, we will not impute to the police an intention to deprive the defendant of his right to the assistance of counsel.[3]

The defendant's statements were properly admitted in evidence and there is no occasion for the exercise of our § 33E powers.

B. *Remarks of the assistant district attorney during closing argument.* During the course of his closing argument, the assistant district attorney made the following remarks in reference to the members of the group who had entered the victim's apartment: "[T]hey forfeited a lot of rights, because when someone commits a crime they do forfeit some rights. When someone is convicted of a crime, they forfeit their

---

[3] The judge instructed the jury with regard to the effect of Mr. Gordon's testimony. The jury were told that, "[I]f you find that Mr. Gordon talked to a responsible person at the police station, it was the police duty to convey that information to Mr. Hooks so that he would have had that additional bit of information that his counsel was at least in communication, and an opportunity to reconsider whether or not he wished to continue answering questions under those circumstances. And if you find that there was such communication to such a responsible person and it was not communicated to Mr. Hooks, I instruct you that that is a violation of Mr. Hooks' constitutional rights and you should not consider the statements that he made thereafter." This instruction does not emphasize the *Mahnke* and *McKenna* circumstances of deliberate or negligent failure to advise the defendant of his counsel's efforts and thus is arguably a more favorable instruction that those cases seem to require.

right to personal freedom. To commit a crime you forfeit some rights. . . . And as a result of the plan that Perry Hooks gave them, as a result of Perry Hooks' planning and plotting and teaching, they ended up murderers." Shortly thereafter, the assistant district attorney made the following remarks to refute the argument that the defendant was more detached from the crime than those who entered the apartment and therefore was guilty of murder in the second degree, rather than in the first degree, if anything, "Well, I suggest to you that [the other members of the group] are first degree murderers because [the defendant] made them first degree murders. . . . [A]nd he is no better than they are."

The defendant now argues that these remarks clearly implied that the other participants had already been convicted of murder in the first degree and that the defendant deserved the same treatment. In fact, the defendant points out, none of the other participants was convicted of murder in the first degree.[4]

We again attach significance to the fact that no objection was taken to the remarks at the time they were made, no exceptions were taken, and no curative instructions were requested. The fact that we may nonetheless find reversible error in the assistant district attorney's closing remarks pursuant to our powers of review under § 33E, see *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975), does not obviate the need to insist that the trial judge be given a fair opportunity to correct ambiguous or misrepresentative statements at a time when such a correction could be achieved easily and without prejudice to either side. At this juncture, the remarks must be taken on their face and without the benefit of clarification by the prosecutor or the judge.

We believe that a possible, but false, inference from the remarks would be that the other participants had been con-

---

[4] They were convicted of other offenses as a result of the incident in question, however. See point 3 C *infra*.

victed of a crime, and that the crime was murder in the first degree. There was also an inference that it would be only fair to mete out the same punishment to the defendant as had been suffered by his confederates. So viewed, it is possible that these remarks, based on unproven facts, were prejudicial in some degree to the defendant. However, in view of the overwhelming evidence of guilt of felony murder adduced at the trial and the statutory designation of felony murder as murder in the first degree, we think the improper remarks were, in this case, harmless beyond a reasonable doubt. See *Commonwealth* v. *Graves*, 363 Mass. 863, 865-866 (1973). Because we believe the outcome was not affected by the remarks, we do not find that this is an appropriate circumstance to afford relief under § 33E.

C. *Disparate treatment and sentences.* The defendant in his brief calls to our attention the following facts. All other participants in the events on the night of the murder were either not indicted, or were indicted for murder in the first degree and allowed to plead guilty to lesser offenses. Of the three members of the group who actually entered the victim's apartment, one pleaded guilty to manslaughter and received a two-year sentence with credit for 385 days already served. Another pleaded guilty to murder in the second degree and received a life sentence; he also pleaded guilty to armed robbery and armed assault in a dwelling for which he received concurrent fifteen- to twenty-year sentences. The third member pleaded guilty to murder in the second degree and received a life sentence. Yet another member of the group, who apparently had not entered the apartment, pleaded guilty to manslaughter and armed robbery for which he received concurrent sentences of eight to twelve years. The defendant contends that he was not allowed to plead guilty to a lesser offense, although the Commonwealth, in its brief, asserts that the defendant was given the opportunity to plead guilty to murder in the second degree but decided instead to go to trial. The defendant vigorously argues that a miscarriage of justice had occurred in view of what he characterizes as (1) the unequal treat-

ment of the participants, (2) the disparity in sentences, and (3) the unfairness of convicting the defendant of murder in the first degree on the broad culpability theory of joint venture felony murder, while those who actually carried out the murder received lesser punishments.

In *Commonwealth* v. *Simpson*, 370 Mass. 119, 126 (1976), we declined to reduce a conviction for murder in the first degree, despite the fact that another participant in the crime, one Washington, was allowed to plead guilty to murder in the second degree. We stated: "The evidence tended to show that Washington was the lead in the commission of crimes in which the defendant willingly participated. We do not know, however, what evidence was available and admissible against Washington at the time his plea was accepted. . . . Under § 33E, in these circumstances, we cannot consider allegedly unfair disparate sentences imposed on the defendant and another" (footnote omitted). The defendant in the instant case distinguishes *Simpson* on the ground that the transcript of his trial clearly indicates the evidence available against the other participants. He also distinguishes *Simpson* as a case not based on a theory of joint venture felony murder.

In *Commonwealth* v. *Pisa*, 372 Mass. 590, 597-598 (1977), we exercised our power under § 33E to reduce a verdict of murder in the first degree to one of murder in the second degree. We noted, however, that the power of this court under § 33E is to be used with restraint, and that the mere inconsistency of verdicts is not ordinarily enough to impel us to exercise that power, citing *Simpson*. It should also be noted that the circumstances of *Pisa* were unusual in that the entire transcript of the trial of the other defendant was made part of the record in the *Pisa* appeal.

Having reviewed the entire record before us, we cannot conclude, as we did in *Pisa*, that "justice requires" the entry of a verdict of a lesser degree of guilt. The doctrines of joint venture and of felony murder, although encompassing broad concepts of culpability, are well established and should not be undermined on an ad hoc basis. As to this par-

ticular defendant, there was substantial evidence as to his involvement and leadership in the planning and perpetration of the crimes. Moreover, it was not irrelevant that the defendant, at age twenty-four was substantially older than all of the other members of the group, the youngest of whom at the time of the murder was age fifteen. The jury were well instructed on the relevant principles of law, and we see no basis for disrupting the verdicts returned by the jury.

4. After a full reading of the record, we find no error and no occasion for exercising our powers under G. L. c. 278, § 33E.

*Judgments affirmed.*